## THE HARTFORD FIRE INSURANCE COMPANY

*v.*

## GEORGE OLCOTT.

*Filed at Ottawa February 3, 1881.*

97 439
70a 321
97 439
75a 376
97 439
175 118
97 439
178 129
81a 261

1. INSURANCE—*who may sue—insurance by mortgagor for benefit of mortgagee—
separate and distinct character of their interests.* Where a party, borrowing
money in pursuance of the terms of his deed of trust, to secure its payment
procured a policy of insurance on the buildings on the premises conveyed, in
terms, to himself, but which contained a clause, that, in the event of a loss,
the money due for the same should be paid to the trustee for the lender,
and the mortgage clause in the policy provided that when the insurance
company should pay the holder of the note any sum for loss, and should
claim that, as to the mortgagor, no liability existed, the company should,
at once, be legally subrogated to all the rights of such holder, under all the
securities held as collateral to the debt, to the extent of such payment,
or, at its option, might pay the holder the whole principal due,
with interest, and should thereupon receive a full assignment and trans-
fer of the securities held as collateral to the debt: *Held,* that this was an
express contract with the creditor of the assured, and that to the extent of
the debt secured by the deed of trust, the creditor had an interest distinct
from that of the owner of the property, and that any loss to that interest
accruing under the policy was payable to the trustee for the use of the holder
of the note, and that he might maintain an action for the same in his own
name.

2. SAME—*and herein, also, of additional insurance.* The owner of property
procured a policy of insurance on the buildings thereon in his own name, for
his own benefit, and for the benefit of a bank to whom he had, on the same
day, given a note for money loaned to him, secured by deed of trust on the
same property, which deed required him to insure the same as a further secu-
rity. The policy provided, that, in case of a loss, the insurance company
should pay the amount of the loss to the trustee named in the trust deed,

for the bank or holder of the note; that the owner, the mortgagor, might procure additional insurance, upon condition that he should not be entitled to recover of the company "any greater proportion of the loss or damage than the amount" insured by the policy bore to the whole sum insured ; and that in case of damage to the property, not totally destroyed, unless the amount of such damages was agreed upon between the assured and the company, it should be appraised by disinterested and competent persons mutually agreed upon by the parties. The mortgage clause in the policy provided that the insurance as to the trustee, or successors only, should not be invalidated by any act or neglect of the mortgagor or owner of the property, nor by the occupation of the premises for purposes more hazardous than were permitted by the policy, only requiring the trustee, or the holder of the note, to notify the company of any change of ownership or increase of hazard which should come to his knowledge, and to pay for such increase of hazard on reasonable demand, if the owner should refuse to pay the same, according to the established scale of rates. The owner of the property afterwards procured four additional policies on the same property, payable to himself and wife alone, in which the bank had no interest : *Held*, that the owner and the bank held distinct interests under the policy, it being, in substance, two contracts; that the owner, in a suit on the policy for a loss, would be limited to a recovery of the *pro rata* share of the company, when prorated with the amounts of the subsequent policies, and would be bound by his act of submitting the amount of damages to appraisal; but the bank, in a suit by it or its trustee, would not be limited to a recovery of the insurance company's prorated share, with the four companies issuing the subsequent policies, nor would it be bound by the selection of appraisers in which it did not join. It having no control over the acts of the mortgagor, was not bound by his acts, or neglect.

. 3. CONTRACT—*construction*—*how arrived at.* The intention of the parties to a contract, if it can be clearly ascertained, from the evidence, must be carried into effect; and, in ascertaining this intention it is proper to take into consideration all the facts and circumstances legally constituting a part of the transaction.

· 4. SAME—*promise to pay a third person.* Where one person, for a valuable consideration, as, the loan of money to him by a bank, agrees to procure, and does procure a promise in writing of another party to pay the bank a sum of money, the promise is valid and binding.

5. SAME—*whether an act is required to be performed, and has been performed, under a contract.* Where a deed of trust is executed, in which is conferred upon a trustee power to sell and convey in the event of an omission to do a specified act, it is conclusive proof that such act is, by the contract of the parties, enjoined to be done; and when also such specified act is thereafter done in proper time by the party whose property is liable to be sold for the omission, it is conclusive proof that it was done pursuant to such contract of the parties.

6. CONSIDERATION—*forbearance to sell property under deed of trust.* Forbearing the sale of property held as security for the payment of a debt is a sufficient consideration to support an executed contract on the part of the owner of the property to keep the same insured.

7. So, where the owner of premises, borrowing money of a bank, gave a deed of trust on the same to secure its repayment, and therein covenanted to have the buildings thereon insured and kept insured for the amount of the loan, and the condition also provided that if he failed to make such insurance, the trustee might, at any time, sell the property, whether the debt was due or not, and he did procure an insurance, payable to the trustee, for the benefit of the bank, and paid the premium for the same: *Held,* that the prevention of the sale of the mortgagor's property, under the power of sale, was a sufficient consideration for the payment of the premium on the policy for the bank.

8. SAME—*who regarded as a party to the consideration—insurance by mortgagor for benefit of mortgagee.* Where, pursuant to the terms of a loan by a bank, and the terms of a deed of trust to secure the repayment of the sum evidenced by notes of the borrower, to keep the mortgaged property insured for the benefit of such bank, or the holders of the notes, as a further security, the borrower paid the premium and kept the property insured, making the policy payable to the trustee for the benefit of the bank, the bank, which the trustee represented, was held to be a party to the contract and the consideration, the additional security arising from the insurance being in consideration of the loan, and the premium paid being to perfect the security.

9. PRACTICE—*error that will not reverse.* Where all the evidence that was offered, or could have been admitted under special pleas, was admitted under the general issue, the ruling of the court, sustaining a demurrer to the special pleas, can not be urged as a ground for reversing a judgment in favor of the plaintiff, as the error, if any, could not have prejudiced the defendant.

10. VARIANCE—*allegation and proof.* Where the owner of property agrees to give a trust deed to secure money to be loaned to him, and also to insure the property for the further security of the lender, which he does do, and the loan is thereby effected, in a suit by the trustee of the lender, to whom it is agreed in the policy to pay the insurance money, there will be no variance if it is alleged in the declaration that the trustee paid the premium for the policy.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Peoria county; the Hon. DAVID McCULLOCH, Judge, presiding.

George Olcott brought assumpsit, in the Tazewell circuit court, against the Hartford Fire Insurance Company on a policy of insurance. The clauses obligatory upon the company run as follows:

"THE HARTFORD FIRE INSURANCE COMPANY.

*Hartford, Connecticut.*

No. 1365.                                                    $5000.

"By this policy of insurance, in consideration of the receipt of $75, do insure Benjamin S. Prettyman, of Pekin, for the amount of $5000, for the term of five years, as follows, viz: $3500 on his two-story brick, metal roofed dwelling-house, occupied by assured as his family residence; $1500 on his two brick barns, three hundred feet north of dwelling, both situated on the north-west corner of the north-east half of section 35, township 25 north, range 5 west, of the third principal meridian, adjoining the city of Pekin, Tazewell county, Illinois.

"$10,000 other insurance permitted. Loss, if any, under this policy, payable to George Olcott, trustee for the Connecticut River Savings Bank, in Charleston, New Hampshire, to secure loan of $10,000.

"Term, five years; amount, $5000; rate, $1\frac{1}{2}$; premium, $75.

"Against all such immediate loss or damage sustained by the assured or his legal representatives, as may occur by fire to the property specified, not exceeding the sum insured, nor the interest of the assured in the property, except as hereinafter provided, from the 16th day of November, 1872, at 12 o'clock, noon, to the 16th day of November, 1877, at 12 o'clock, noon, to be paid sixty days after due notice and satisfactory proofs of the same, made by the assured, are received at the office of this company, in Chicago."

The conditions in the policy relied upon in defence were the following:

"In no case shall the claim be for a greater sum than the actual damage to or cash value of the property at

the time of the fire, nor shall the assured be entitled to recover of this company any greater proportion of the loss or damage than the amount hereby insured bears to the whole sum insured on said property, whether such other insurance be by specific or by general or floating policies, and without reference to the solvency or the liability of other insurers. * * * Damage to property not totally destroyed, unless the amount of said damage is agreed upon between the assured and the company, shall be appraised by disinterested and competent persons, mutually agreed upon by the parties. * * * Re-insurance to be on the basis, that in no event will this company be liable for a sum greater than such portion hereby re-insured bears to the whole sum insured by the company re-insured, and, in case of loss, this company to pay *pro rata*, at and in the same time and manner as the company re-insured."

Annexed to the policy, and a part thereof, was the mortgage clause set out in the opinion.

The general issue was pleaded, and also several special pleas, to which demurrer was sustained.

The cause was removed, by change of venue, to Peoria county, by agreement of parties. The cause was heard before said last named court, at its May term, 1879, and, by agreement of parties, a jury was waived, and the issues were submitted to the court, who thereupon found for the plaintiff, and assessed his damages at $3745, for which amount, after overruling a motion for a new trial, judgment was rendered. Proper objections and exceptions were made or taken during the various stages of the trial to raise the questions here to be passed upon, and appeal was prayed and perfected to the Appellate Court of the Second District. That court, at its December term, 1879, rendered a judgment affirming the judgment of the circuit court, and this record is brought here by appeal, for the purpose of procuring a reversal of that judgment.

The proofs introduced on the trial established that on the 16th of November, 1872, Benjamin S. Prettyman executed his promissory note, as recited in the opinion, to the Connecticut River Savings Bank; that on the same day he and his wife executed a deed of trust to George Olcott, as trustee, to secure that note, conveying the property, and upon the terms and conditions recited in the opinion; and that said Prettyman also paid the premiums, and the policies of insurance were issued and delivered to the bank, as is likewise recited in the opinion. Prettyman paid the premium out of the money he borrowed from the bank. He says it was all done at the same time and in the same transaction. On the 1st of May, 1876, other insurance, to the amount of $20,000, in four policies, one each for $5000, in the Underwriters, in the Niagara, in the Fire Association, and in the German American, was procured by and issued to Benjamin S. Prettyman and Sarah A. Prettyman. Each of these included $2750 on the dwelling house, and covered certain household furniture and chattels not covered by the first two policies. These last policies contained no mortgage clause, nor did they, in anywise, make reference to a mortgage.

In the early morning of the 16th of November, 1877, the dwelling house was destroyed by fire. Notice and proofs of loss were furnished the insurance company, and Prettyman and wife made claim on all six of the companies in which policies had been taken out. They entered into an agreement with these companies to appraise the amount of damages to which they were entitled, and left it to two persons, mutually selected, to make such appraisal. The persons thus selected appraised the total damages at $11,374.48, making the proportion of the Hartford and Phœnix companies $2211.71 each, and, as between these parties, the loss was adjusted upon that basis, but neither Olcott nor the Connecticut River Savings Bank was party to the agreement to make this appraisal, nor acquiesced therein after it was made.

The other facts necessary to an understanding of the case appear in the opinion.

Messrs. PADDOCK & IDE, for the appellant:

1.   The contract declared on and offered in evidence was a simple contract between appellant and B. S. Prettyman, for the payment of money by appellant to Prettyman, and not to appellee.   It was based on a consideration moving from Prettyman alone, and gave no right of action at law in the name of appellee.   Wood on Fire Ins. 817, sec. 488; 1 Addison on Contracts, 50; Dicey on Parties to Actions, 81, *et seq.*; *New England Ins. Co.* v. *Wetmore,* 32 Ill. 242; *Illinois Mut. Ins. Co.* v. *Stanton,* 57 id. 354; *Granger* v. *Howard Ins. Co.* 5 Wend. 202; *Blymire* v. *Boistle,* 6 Watts, 182; *Martin* v. *Franklin Ins. Co.* 38 N. J. L. 140; *Grosvenor* v. *Atlantic. Ins. Co.* 17 N. Y. 391; *Clay Ins. Co.* v. *Huron, Salt & L. Co.* 31 Mich. 346; *Hartford Fire Ins. Co.* v. *Davenport,* 37 id. 609; *St. Paul Ins. Co.* v. *Johnson,* 77 Ill. 598; *Westchester Ins. Co.* v. *Foster,* 90 id. 121; *Continental Ins. Co.* v. *Hulman & Cox,* 92 id. 145; *Chamberlain* v. *New Hampshire Ins. Co.* 55 N. H. 249.

2.   Passing by the question whether appellee could rightfully sue at law in his own name, we say the special pleas presented a defence to the suit.   In sustaining a demurrer to these pleas, the circuit court held the appellee exempt from the obligation of the contract sued on.   The first error assigned relates to this branch of the case.   *Hulman et al.* v. *Continental Ins. Co.* 92 Ill. 145; May on Ins. sec. 13.

3.   The third and fourth pleas admitted a cause of action, but alleged new matter in bar of the suit, viz: as to all in excess of the amount awarded, by the appraisal, and as to the amount awarded, tender and refusal.   The second plea was new matter.   None of them amounted to the general issue, because none of them went in denial of the declaration. Gould's Pl. chap. 6, secs. 94, 95; *Knœbel* v. *Kircher,* 33 Ill. 308; *Cook* v. *Scott,* 1 Gilm. 333; *Abrams* v. *Pomeroy,* 13 Ill.

133; *Strader* v. *Snyder*, 67 id. 404; *White* v. *Cloyes*, 32 id. 325.

4. As the policy provides that in no case shall the claim be for more than the actual damage to the property, and that the assured shall be entitled to recover of the appellant only that proportion of the damage which the sum insured by the appellant bears to the whole sum insured on the property, this binds appellee to observe the principle of indemnity, which is the first principle of the law of insurance. The result thus far, as we think, carries the damages to be paid by appellant beyond the point of indemnity.

5. The amount of insurance of 1876 was a part of the whole sum insured on the property, within the meaning of the policy sued on. *Continental Ins. Co.* v. *Hulman & Cox*, 92 Ill. 145; *Mussy* v. *Atlas Ins. Co.* 14 N. Y. 79.

6. On the trial, under the general issue, there was a variance between the contract alleged and that proved, in this: It was alleged that the consideration was paid by (*i. e.* for) appellee. The proof was that Prettyman paid it for himself. The averment that the premium was paid by appellee means that Prettyman advanced it on the credit of appellee, to be reimbursed by the latter, which is not true. 1 Saund. Pl. & Ev. 194.

Messrs. STEVENS, LEE & GALLAGHER, and Messrs. COHRS & GREEN, for the appellee:

If the contract was made for the benefit of Olcott, the plaintiff, he can maintain an action upon it. *St. Paul Fire and Marine Ins. Co.* v. *Johnson*, 77 Ill. 600; *Continental Ins. Co.* v. *Hulman & Cox*, 92 id. 145; *Motley* v. *Mfg. Ins. Co.* 29 Me. 338; *Gantzert* v. *Hoge*, 73 Ill. 30; *Moore* v. *House*, 64 id. 163; *Newman* v. *Sprg. Fire and Marine Ins. Co.* 17 Minn. 125.

The trustee held this insurance as a security, which Prettyman could not, by any act or omission, impair. We insist that any construction of the first section of the mortgage pro-

vision, exempting the trustee interest from any act or neg-
lect of Prettyman, that does not totally destroy it, denies the
power to Prettyman to conclude Olcott by any agreement
that the loss was only partial, or by an agreement as to the
amount of the damages, and to conclude him by an appraise-
ment.

Prettyman, when he made the hasty submission, knew he
had no substantial practical interest in the policy. As to
him it was void.

We claim that the rights of Olcott are to be ascertained
and determined by the special agreement, called the mort-
gage clause, attached to the policy and separately signed by
the company and dated,—and that whenever any provision
or condition in the policy, as it is written without that
special agreement, conflicts therewith, the special agreement
will prevail, though the conditions of the policy fail. *Hastings*
v. *Westchester Ins Co.* 73 N. Y. 141.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the
Court:

Since all the evidence that was offered or could have been
admitted under the special pleas was admitted under the gen-
eral issue, the ruling sustaining demurrers to the special pleas
can not be urged as ground of reversal. If that ruling was
error, it was such as in nowise prejudiced appellant. *Curtiss*
v. *Martin, use, etc.* 20 Ill. 557; *Jones* v. *The Council Bluffs
Bank, etc.* 34 id. 313.

All the questions of law essential to the determination of
the rights of the parties arise upon a consideration of the
evidence, in regard to which there is no material controversy.

The question first to be considered is, was the suit rightly
brought in the name of appellee?

Appellant contends that the contract declared on and
offered in evidence was a simple contract between appellant
and Benjamin S. Prettyman, for the payment of money by
appellant to Prettyman, and not to appellee; that it was based

on a consideration moving from Prettyman alone, and gave no right of action in the name of appellee. This, in our opinion, results from a partial consideration of the evidence, and is not sustained when the full effect of all the evidence is considered. The intention of the parties here, as in other contracts, if it can be clearly ascertained from the evidence, must be carried into effect,—and in ascertaining this intention it is proper to take into consideration all the facts and circumstances legally constituting a part of the transaction in which the policy was issued.

The facts and circumstances material to the present inquiry are: On the 16th day of November, 1872, Benjamin S. Prettyman executed his promissory note, due in five years, for $10,000, bearing interest at the rate of ten per cent per annum, payable semi-annually, to the Connecticut River Savings Bank. On the same day, Prettyman (his wife Sarah A. joining him therein) executed to appellee, as trustee, a deed of trust, to secure the payment of this note and accruing interest, on certain real estate near Pekin, which embraced the dwelling and outbuildings constituting Prettyman's homestead. The deed contains, among other things, this declaration of trust: "In trust, nevertheless, that if default shall be made in the payment of the said promissory note or the interest thereon,   *   *   *   or to pay all taxes and assessments *   *   *   assessed upon said property, or shall fail to keep the buildings on said premises constantly insured in some responsible insurance company to the amount of $10,000, for the benefit of said Connecticut River Savings Bank, or the holder or holders of said promissory note, as further security therefor, then," etc., concluding with the usual power of sale. And at the conclusion of the covenants this language occurs: "And that they [the grantors] will, during the continuance of these presents, pay all taxes and assessments levied on the premises;   *   *   *   and in case said parties of the first part shall fail to pay any taxes or assessments levied on said premises before they are advertised for sale, or shall fail to keep

said buildings insured as herein required, then, and in that case, said party of the second part shall immediately sell," etc. This can leave no doubt that it was understood and intended that Prettyman should effect an insurance on the building to the amount of $10,000, and that such insurance, when effected, would be "for the benefit of the bank, or the holder of the notes, as further security therefor." And since to keep property insured requires the payment of the necessary premium, it must be equally free of doubt that it was understood and intended that Prettyman should pay the premium.

But counsel for appellant argue that this language does not amount to a covenant by Prettyman to keep the property insured, and they say "that appellee lent his money to Prettyman, not on an agreement of Prettyman to insure, but on a deed with a power to sell the land, if Prettyman saw fit, as he lawfully might, to omit to insure," and that "this being so, appellee's remedy is confined to his contract with Prettyman, whatever would have been the case had he taken an agreement from Prettyman to insure, on a valid consideration paid Prettyman."

We are not now concerned to ascertain in what way or by what form of action Prettyman could have been compelled to insure, or to respond in damages for not insuring had he refused to keep the property insured. He did keep the property insured, and the inquiry is to ascertain whether he did it of his own volition and for his own benefit, simply, or whether he did it because of his contract with the Connecticut River Savings Bank, and for the benefit of that bank.

It is not true, in a legal sense, as counsel contend, that Prettyman had the option to insure or not, any more than it is true that the debtor has an option to pay his creditor or not, as he may choose. Either, it is true, may refuse, but the act of refusal will not stay the hand of the law. In any view, Prettyman's refusal here would have been followed by the immediate sale of property, exceeding in value several times the amount of his debt, and the appropriation of its proceeds

for the payment of his debt, although not due for five years,—
or, in other words, as respected the security of the trust deed,
a debt not due for five years would have been instantly col-
lectible by the sale of Prettyman's property. Under such
circumstances, to say that there is no consideration for the
payment of the premium on a policy for the bank, is simply
to lose sight of what constitutes a consideration. If forbear-
ing the sale of property held as security for the payment of a
debt is not a sufficient consideration to support an executed
contract, what would constitute such a consideration?

We know, from the common course of business, that con-
tracting precedes the act of loaning money, especially when
the loan is secured by securities collateral to the promise of
the borrower. And when a deed of trust is executed in which
is conferred upon a trustee power to sell or convey in the
event of omission to do a specified act, it is conclusive proof
that such act is, by the contract of the parties, enjoined to be
done; and when, also, such specified act is, thereafter, done in
proper time by the party whose property is liable to be sold
under the deed of trust for the omission, it is conclusive proof
that it was done pursuant to such contract of the parties.

Counsel again say: "If it be true that Prettyman agreed
with Olcott to pay Prettyman's money to appellant, then
Olcott must have contemplated the legal effect of such a pay-
ment, which was that Olcott was to avoid becoming a party
to the consideration." This, in our opinion, is a misappre-
hension. Olcott here, of course, as elsewhere in the discus-
sion, and as he is in fact, stands merely as the trustee or
representative of the bank, having no separate or personal
interest in the transaction. And if Prettyman, pursuant to a
legal contract to keep the property insured "for the benefit
of said Connecticut River Savings Bank, or the holder or
holders of said promissory note, as further security therefor,"
paid the premium and kept the property insured, it seems
quite clear that the bank, which Olcott represents, was a party
to the consideration. It made the loan. The security is in

consideration of the loan, and this premium had to be paid to perfect the security.

On the same day that the trust deed was executed, the policy in suit was issued, and another policy, by the Phœnix Insurance Company, was also issued at the same time, insuring the same property for the same term, and in a like sum, and upon like conditions. The premiums for both policies were paid by Prettyman, and both policies were issued and delivered by the respective companies directly to the agent of the bank. These policies were for the amount required by the deed of trust. The premiums were paid, as Prettyman says, in the same transaction in which the loan was obtained, and we can have no doubt the payments were made for the bank, and pursuant to the contract by which the loan was effected. We therefore assume there is shown a motive, a legal consideration, and an intention to issue a policy creating a legal obligation, in the event of loss, upon appellant to pay to the bank, as security for its loan. Was such a policy issued?

Both the policy issued by appellant and that issued by the Phœnix company contain this language: "Do insure Benjamin S. Prettyman, of Pekin, for the amount of $5000, for the term of five years, as follows, viz: $3500 on his two-story brick, metal roofed dwelling house, occupied by assured as his family residence; $1500 on his two brick barns; * * * loss, if any, under this policy, payable to George Olcott, trustee for the Connecticut River Savings Bank, in Charleston, N. H., to secure a loan of $10,000." Annexed to and forming a part of each policy is the following mortgage clause:

"It is hereby agreed, that this insurance, as to the interest of the said trustee or successors only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy.

"It is further agreed, that the holder of the notes or bonds secured by said mortgage or trust deed, shall notify said company of any change of ownership or increase of hazard which shall come to his or their knowledge, and that every increase of hazard not permitted by the policy to the mortgagor or owner, shall be paid by such holder on reasonable demand, (after demand made by this company upon, and refusal by, the mortgagor or owner to pay,) according to the established scale of rates, for the use of such increased hazard, during the then current year.

"It is also agreed, that whenever the company shall pay the holder of any such notes or bonds any sum for loss under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed, it shall at once be legally subrogated to all the rights of such holder, under all the securities held as collateral to the debt, to the extent of such payment, or, at his option, may pay to such holder the whole principal due, or to grow due, on the mortgage, with interest, and shall thereupon receive a full assignment and transfer of the securities held as collateral to the debt, but no such subrogation shall impair the right of the holder of such securities to recover the full amount of his claim.

JAMES HAINES, Agent."
Pekin, Ill., Nov. 16, 1872.

The language declaring who is insured and on what property, if taken by itself, undoubtedly discloses a contract with Benjamin S. Prettyman to insure him against loss on his property. But that language is not to be taken by itself. It must be taken in connection with the other language, that "the loss, if any, under this policy, is payable to George Olcott," etc., "to secure loan of $10,000," and in connection with the mortgage clause. In that clause it is clearly and amply recognized that Olcott, as trustee, has an interest in the policy, to the amount due upon the deed of trust, distinct from that of Prettyman. His interest, or that of his successor, is not to be invalidated by any act or neg-

lect of the mortgagor or owner of the property insured, nor by the occupation of the premises for purposes more hazardous than are permitted by the policy; while Prettyman's interest is to be invalidated by such acts or neglect as are specified in the policy, and by the occupation of the premises for purposes more hazardous than are permitted by the policy.

An increase of hazard, which would avoid the policy as to Prettyman, only imposes upon the holder of the note secured by the deed of trust the burden of notifying appellant of the fact of such increase of hazard, when it comes to his knowledge, and to pay, after reasonable demand, to appellant, according to the established scale of rates, for the use of such increased hazard, during the then current year.

And, when the insurance company shall pay the holder of the note any sum for loss under the policy, and shall claim that, as to Prettyman, no liability therefor existed, it shall at once be legally subrogated to all the rights of such holder, under all the securities held as collateral to the debt, to the extent of such payment, or, at its option, may pay to such holder the whole principal due, with interest, and shall thereupon receive a full assignment and transfer of the securities held as collateral to the debt.

Now, in these respects, there is an express contract directly between appellant and the bank. It has not been and we do not think it can be claimed that such contract is not legal. For any infraction thereof, why will an action at law not lie between these parties? We perceive no reason.

It clearly appears, that to the extent of its indebtedness as secured by the deed of trust, the bank has an interest distinct from that of Prettyman; and any loss to that interest accruing under the policy is payable, by the express language of the policy, to George Olcott, trustee.

This promise, in connection with the other evidence we have been considering, is wholly unlike that in the class of cases of which *Grosvenor* v. *Atlantic Fire Ins. Co.* 17 N. Y.

391, may be taken as a type, and to which *Illinois Fire Ins. Co.* v. *Stanton,* 57 Ill. 354, belongs.

In those cases there is a mere appointment, without any legal consideration, to pay the mortgagee or trustee. There is no legal contract by the insurance company, with the mortgagee or *cestui que trust,* or its representative, the trustee.

In the case at bar, on the other hand, appellant, for a consideration paid to it by Prettyman pursuant to a contract between him and the bank, by which he obtained a loan of $10,000 of the bank, and in part the consideration of that loan, promised the bank to pay its trustee the loss, if any occurred, under the policy.

That such a promise, even if it had not been in writing, and the Statute of Frauds had been pleaded, would have been valid and binding, is clearly settled by decisions of this court, and *a fortiori* must it be so when reduced to writing and no question of the statute is involved.

In *Eddy* v. *Roberts,* 17 Ill. 505, Williams sold and delivered certain property to the defendant, and the defendant, as a part of the transaction, agreed with Williams to pay his debt to the plaintiff. It was held this promise was supported by a sufficient consideration, and the plaintiff might recover upon it, declaring as upon a special contract made by the defendant with the plaintiff.

In *Brown* v. *Strait et al.* 19 Ill. 88, Collins sold the defendants a mill, for which they paid him some money, and verbally promised to pay his debt to the plaintiff. It was held that the consideration was sufficient, and an action lay on the promise.

In *Bristow et al.* v. *Lane et al.* 21 Ill. 194, real estate was conveyed by the debtor of the plaintiffs to the defendants on their written undertaking to compromise with his creditors in Philadelphia and New York, and take up the notes held against him in those cities, for debts contracted in the spring of 1856. It was held that an action lay, in the name of the plaintiffs, on this undertaking, they showing that they be-

longed to the class embraced by its terms. See also, to the same effect, *Schemerhorn* v. *Vanderheyden,* 1 Johns. 139, and same case in 3 American Decisions, 304, and note on pp. 305–6.

We regard, also, *Westchester Fire Ins. Co.* v. *Foster,* 90 Ill. 121, and *Chamberlain* v. *New Hampshire Fire Ins. Co.* 55 N. H. 249, to which the opinion in that case refers, so far as the present question is concerned, as precisely analogous. To the like effect are, also, May on Insurance, § 447, and *Barrett* v. *Union Mut. Fire Ins. Co.* 7 Cush. 175.

In *Hastings* v. *Westchester Fire Ins. Co.* 73 N. Y. 141, a mortgage clause, in the precise phraseology of that in the policy before us and in that of the Phœnix company, was added, by the consent of all parties, sometime after the original policy was issued. It was said: "The legal effect of the mortgage clause was, that the defendant agreed that in case of loss it would pay the money directly to the mortgagees, and they were thus recognized as a distinct party in interest. * * * It was an independent agreement, partaking in no sense of the character of an assignment of a policy of insurance, but one in which the mortgagees were recognized as a separate party, having distinct rights, and entitled to receive the full amount of insurance money, without any regard whatever to the owner of the property." If this be the effect of adding a mortgage clause, like that before us, after a policy is issued, we are unable to perceive any ground upon which it can be said to have a different effect if made contemporaneously with and as a part of the policy. This case, regarded as an authority, is conclusive not only as to the present question, but as to every question raised in the case before us.

The next question is, conceding the action rightly brought, is the Connecticut River Savings Bank bound by the acts of Benjamin S. Prettyman and Sarah A. Prettyman, his wife, in obtaining to themselves and for their own benefit the four additional policies of insurance, and in submitting the question of the amount of damages to appraisers? If it is thus

bound, it is manifest that, notwithstanding the bank had a separate and distinct legal interest in the insurance, that interest might be so impaired by the acts of Prettyman, over whom it had no legal control, as to be practically worthless. By the policies delivered to the bank, it was entitled to all the loss on the dwelling, but if it is bound by the acts of Prettyman and wife in obtaining additional insurance, it can only recover the amount that appellant and the Phœnix company will have to pay on pro rating with the other companies, and will, consequently, be the loser of the amount the other companies will have to pay on such pro rating.     ' .  . :

This will be the actual loss, but the principle recognizes in Prettyman the right to have multiplied the policies with which the policies delivered to the bank would have to be pro rated indefinitely, each additional policy diminishing, proportionally, the amount to which the bank would be entitled in the event of the destruction or injury of the property insured. So, also, the same clause in the policy which authorizes Prettyman to agree to an appraisal, authorizes him to agree, without an appraisal, to the amount of damages.  .
The claim made by appellant is, therefore, in effect, that although the bank has a substantial legal interest in this insurance, which may be enforced in an action at law, Prettyman may, by his own acts, without the knowledge or consent of the bank, practically annihilate that interest, and substitute other insurance for his own benefit. This, surely, can not be the law. The mortgage clause distinctly recognizes, as we have before seen, an interest separate from that of Prettyman in the insurance, and that this interest is for the security of the holder of the note, whoever he may be. It further, in substance, declares, that the policy, as to the mortgagor, is one thing, and as to the holder of the note another and very different thing. As to Prettyman, the policy is to be read without the mortgage clause,—as to the bank, it is to be read as affected by that clause. In effect, there are two distinct contracts of insurance,—one by the mortgagor—the other

by the mortgagee,—and this view gives full force to all the language, and none other will.

The mortgagor is the assured in the four policies issued on the first of May, 1876, as well as in the policy issued by appellant and that issued by the Phœnix, while the bank is also the assured in the latter two policies, but in those policies only. As to those, they are entitled to pro rate with each other, because such was the contract between the companies and the bank. But the bank not being the assured in the four other policies, it has no contract with the appellant and the Phœnix that they shall pro rate with those. Prettyman, the mortgagor, however, has such a contract, and, as to his interests, the contract should be enforced.

It is the assured, not Prettyman nor the bank, or holder of the note by name, but whichever is seeking to recover under the policy for loss, who must be held entitled to recover loss or damage "not exceeding the sum insured nor the interest of the assured in the property;" and who was authorized to effect re-insurance, upon condition that he should not be "entitled to recover of appellant" "any greater portion of the loss or damage than the amount" insured by this policy "bears to the whole sum insured;" and, also, whose "damage to the property not totally destroyed, unless the amount of said damage is agreed upon between the assured and the company, shall be appraised by disinterested and competent persons, mutually agreed upon by the parties." And, hence, in a suit by Prettyman on the policy, he could not recover a sum exceeding his interest in the property, and he would be limited to a recovery of the *pro rata* share of this company when pro rated with the other companies in which he had effected additional insurance, and would also be bound by his act of submitting the amount of damages to appraisal; and the bank, in a suit by itself or its trustee on the policy, would be limited in its recovery to its interest in the property, but would not be limited to a recovery of appellant's *pro rata* share with the four companies issuing policies to Prettyman

and wife, nor would it be bound by the selection of apprais-
ers, because in these additional policies it was not the *assured*,
and it did not, as the assured, join in selecting the appraisers,
and so is not within the contemplation of the clauses in the
policy relating to those questions.

That this is the correct view will be quite apparent, as we
think, by a careful examination of the mortgage clause.

That clause does not call the mortgagor the *assured*, as it
doubtless would, if he, in fact, were the only assured, but it
calls him mortgagor simply, and, as repeatedly before ob-
served, speaks of him and the trustee or the successor of the
trustee, as having distinct separate interests in the insurance.

In the second branch of that clause, a duty is imposed upon
the holder of the note secured by the mortgage, by which the
insurance shall be preserved for his benefit, although it may
be forfeited as to the mortgagor. And, in the last branch, the
holder of the note and the mortgagor are still regarded as hav-
ing rights under the policy, under different states of fact, and it
is assumed there may be a liability to the holder of the note
when there would be no liability to the mortgagor, under
such circumstances that it would be to the interest of the
company to be subrogated to the rights of the holder of the
note.

And, to further repel the idea that the *assured*, throughout
the policy, stands for mortgagor, or that the mortgagor's acts
should bind the holder of the note, it is expressly provided
that the "insurance, as to the interest of the trustee or suc-
cessors only therein, shall not be invalidated by any act or
neglect of the mortgagor or owner of the property insured,
nor by the occupation of the premises for purposes more haz-
ardous than are permitted by this policy." This language is
as broad and comprehensive as it well could be, so far as re-
lates to the acts or neglects of the mortgagor. We perceive
no reason for holding, as contended by counsel for appellant,
that the word "invalidate" should be held to mean a forfeit-
ure of the policy for every purpose, and not simply its im-

pairment. The same reason existed for not allowing it to be thus impaired, as totally forfeited. One of the definitions given of the word, by Webster, is, "to weaken or lessen the force of," and, to our minds, it is clear this is the sense in which the word is here used. The bank nor the holder of the note could have no control over the acts or neglect of Prettyman, and any weakening or lessening the force of the security held for the note would work injury, against which protection would be desired. Naturally, it would be the fact of impairment, and not alone total loss, which would cause anxiety.

We have already seen the taking of additional insurance, in which the bank or the holder of the note would have no right to share, but with which appellant and the Phœnix company would be entitled to *pro rate*, would necessarily invalidate this insurance as to the interest of the bank, or the holder of the note, in proportion as appellant and the Phœnix company would thereby be relieved. This is by an act of the mortgagor, and, so, clearly within the clause. And, as has been before seen, this additional insurance is not authorized by any language of the policy applicable to the bank or the holder of the note, because the language allowing additional insurance can have no application to others than those who will occupy the position of *assured* in all the policies. Obviously, it does not include strangers, and the principle that excludes them will exclude all not occupying the position of assured in all the policies. The reason why additional insurance, to be *pro rated* in the event of loss, is allowed is, it does not diminish the amount payable to the assured, and, at the same time, lightens the burden upon the insurers. And the mere statement that an amount is to be *pro rated*, of necessity implies there is a common debt or liability due from several parties to the same party. *Pro rating* debts due to different parties on separate contracts has never been heard of.

We are fully sustained in these views by *Hastings et al.* v. *Westchester Fire Ins. Co. supra.* There, in speaking of the

mortgage clause: and its use of the word "invalidate," it is said: "Where it provides that it shall not be 'invalidated,' it means that it shall continue valid for the full amount named, despite of any act or neglect of the owner or mortgagor." P. 149. And again, in speaking of subrogation, as provided for in that clause, it is said: "There are, moreover, strong reasons for claiming that the insertion of the clause in regard to subrogation is evidence of an intention that the plaintiff should be exonerated from the application of the provision in the policy as to other insurance, and that the defendant should be protected by subrogation. By the latter provision, whenever the defendant paid the mortgagee any sum for loss, and claimed, that as to the mortgagor or owner, no liability existed therefor, the right to be subrogated was complete. If the full amount of the policy had been paid, and it exceeded the liability of the defendant to the owner, as was the fact if the right to contribution existed, then the defendant was fully protected by the mortgage clause. Such right would not have existed if the plaintiffs were within the provision as to other insurance, and hence it follows that it was the intention of the parties to restrict its operation, and to provide against its effect by a full and sufficient stipulation entered into for that express purpose. The contract is complete by placing such an interpretation upon its provisions, and a contrary one would be adverse to its plain meaning and import." Page 151–2.

The fact that Prettyman may have received more than he was entitled to, from the different companies, can not affect the bank. It, neither in its own acts, nor in those of its trustee, did anything legally authorizing Prettyman to receive such excess.

The same reasoning which shows that the bank is not to be affected by the act of Prettyman in obtaining the additional insurance, also shows that it is not to be affected by his act in submitting the question of loss and damage to the appraisers. By such act, no more than by the other, could

he " invalidate " the insurance as to the interest of the bank therein.

The only remaining question to be considered is, was there a variance between the contract alleged and that proved.

The respect in which it is claimed a variance existed is, it is alleged that the consideration 'for the policy was paid by appellee, whereas the proof shows that it was paid by Prettyman.

We have already seen that Prettyman, in paying such consideration, was acting under and in compliance with his contract with the bank, whereby he obtained the loan of $10,000, and that the payment of the premium by him was, in fact, for the bank, and as a part of the consideration for that loan. Under these circumstances, it might properly have been alleged the consideration was paid by appellee. *Eddy et al. v. Roberts, supra,* on p. 508, 17 Ill.

But the declaration alleged the facts at length, precisely as we understand them to have been proved.

We think the judgment of the Appellate Court right. It must, therefore, be affirmed.

*Judgment affirmed.*