## Claude Benjamin, Appellee, v. Bankers' Union of the World, Appellant.

### Gen. No. 16,084.

1. COVENANT—*when action of lies.* The action of covenant may be brought by a beneficiary to recover on a benefit certificate under seal.

2. PLEADING—*amendment of verification.* It is within the discretion of the trial court to deny a motion to amend an affidavit filed to verify a plea.

3. INSURANCE—*change in by-laws.* Where the by-laws are made a part of the contract of insurance, the time stated in them for the payment of monthly dues cannot be changed without the specific consent of the assured so as to place him in default on failure to conform to the more drastic provisions of the amendment.

4. PLEADING—*allegations not denied directly are admitted.* Pleas to a declaration alleging waiver of proof of death of assured on the ground that defendants refused to give blanks for such proof and declared that they were not liable in any event admit the allegation of waiver where they allege only, that the constitution requires the Board of Directors to pass on death claims and that such board did not refuse to give blanks and did not declare that the defendants were not liable in any event; and that under the policy proofs of death must be made to the Supreme Lodge and were not so made.

5. APPEALS AND ERRORS—*waiver.* Though no cross-error is assigned by appellee to the refusal of an instruction to the effect that insured was not bound by a change in the by-laws of the insurer as to forfeiture on nonpayment of premiums, such fact is not a ground for reversal of a judgment against insured, where the entire defense was based on such a default in premiums and the Appellate Court takes the same view of the law as is stated in the refused instruction.

6. INSURANCE—*mortality tables.* Where a certificate of insurance provides for an abatement from its face when the member shall have died without having lived out his expectancy according to the "American Experience Tables of Mortality," the title page and a portion of another page of a book purporting to show the expectancy of life at the age of the member is properly excluded from evidence in an action on the policy, where it is not shown that the pages were from the "American Experience Tables of Mortality," or were a correct transcript thereof.

Appeal from the Circuit Court of Cook county; the Hon. DAVID T. SMILEY, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed October 7, 1912.

JOHN W. BURDETTE, for appellant.

SAMUEL B. KING and JULE F. BROWER, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

In this case there are 75 assignments of error, 5 being for the overruling of different demurrers interposed by the defendant at various stages of the pleadings, 5 for the sustaining of different demurrers interposed by the plaintiff in the pleadings, 1 for overruling motion for a new trial, 1 for overruling motion in arrest of judgment, 1 for entering judgment against the defendant, 1 for denying motion for leave to file amended affidavit verifying a plea of *non est factum,* 4 for refusing to give a peremptory instruction for defendant and denying motion for such instructions, 2 for admitting the instrument in evidence on which the suit is based, 41 for other rulings on evidence (exclusion and admission), 5 for giving erroneous in-

structions and 9 for refusing tendered instructions other than the peremptory one.

The pleadings are exceedingly involved and contain on both sides technical errors in pleading, being circular, argumentative, indefinite and with departures, duplicities and immaterial issues. They include a declaration (in two counts), 6 pleas, 15 replications, 15 rejoinders, 18 surrejoinders, 9 rebutters and 16 demurrers. This is, of course, exclusive of similiters or joinders and of many demurrers after the sustaining of which, leave to amend the pleading demurred to was taken and° availed of. There were not 80 separate documents filed in this maze of pleadings, but it would have been easier to analyze the issues if there had been, for in an attempt to condense them in the later stages of the pleading, the parties rejoined, surrejoined, rebutted and demurred to several prior pleadings together selected as in their opinion involving the same issue. The pleadings thus resemble a very much tangled and knotted ball of twine, which it is almost impossible to unravel. The case might well serve for an argument for a reformed system of pleading, for the facts and the respective claims of the parties are very simple.

The plaintiff was the beneficiary named in the following certificate of membership in the Bankers Union of The World:

"No. 27531; Class F; $1,000.00; Age 51; B. U. W. The Bankers Union of the World, Omaha, Nebraska, U. S. of America.

"This certifies that Emma G. Benjamin, having complied with all of the requirements of the Order, and in consideration of the payments of the premium and fees necessary to be paid in advance herein, is a member of Chicago Lodge No. 779, Bankers Union of the World, located at Chicago, in the State of Illinois, and is entitled to all of the rights, privileges and benefits of membership therein. That upon receipt by the Supreme Lodge at its office in the City of Omaha Nebraska, of satisfactory proofs of the death of said

member, and within ninety days thereafter, there will be paid the beneficiary herein, Claude Benjamin, related to the said member as son, if then living, otherwise to the legal heirs of the said member, upon delivery of this policy the sum of one thousand dollars. That upon receipt of satisfactory proofs thereof, and within ninety days thereafter, the Supreme Lodge will pay to the said member, if entitled thereto, such additional benefits as are recited at length on the reverse side hereof. This policy is issued to and accepted by the holder hereof upon the terms and subject to the conditions set forth in the Constitution and By-laws of this Union, and subject to the conditions and stipulations on the reverse side hereof, all of which are hereby made a part of this contract, as fully as if they were recited at length over the signature hereto affixed. In witness whereof the Bankers Union of the World has caused to be affixed hereto the signatures of its Supreme President and its Supreme Secretary at its office in the City of Omaha, Nebraska, 10th day of Sept., 1901. Member accepted and Policy delivered this.....day of....., by Subordinate Lodge No. (Seal of the Bankers Union of the World, Supreme Lodge B. U. W. Nebraska, Omaha). Signed Frank J. Rost, President. Signed E. C. Spinney Supreme President ..................., Secretary. Signed M. Burdock, Acting Supreme Secretary.''

Endorsed on the reverse side of the foregoing, among other stipulations, appears the following:

"Death Benefit. Within ninety days after receipt and approval of satisfactory proof of the death of the said member there shall be paid to the beneficiary named herein if living at the time of the death of the member, if not, then to the legal heirs of the said member aforesaid such balance, if any, of the amount payable under this policy, as may remain unpaid to the member, payable at the Supreme Office of the Order in the City of Omaha, Nebraska, upon the surrender and cancellation of this Policy. Should said member die before having lived out his expectancy of life, based on his age at entry, according to the American Experience Tables of Mortality, there shall

be deducted from the Death Benefit hereunder a sum equal to the amount of one payment (at the rate paid by the member) for each month of the unexpired period of such life expectancy. Accident and disability benefits payable hereunder shall be subject to proportionate deductions. All deductions, as provided above, shall remain in the Benefit Fund, in accordance with the Constitution and By-laws of the Order.''

Emma G. Benjamin died on the 13th day of October, 1904.

The defendant not having paid the plaintiff the $1,000 he began suit in the County Court of Cook County in "*covenant*" Nov. 3, 1904, and on the verdict of a jury recovered judgment against the defendant for $1,000 on May 8, 1909.

In his declaration the plaintiff alleged that he had requested blanks from the defendant to make proofs of death, and the defendant had refused, saying it was not liable, and had thereby waived such proofs.

The defendant says that the suit of the plaintiff must fail because brought in covenant, and argues that *assumpsit* only will lie; says the seal on the certificate is surplusage, and the attestation clause gives no authority to attach it, and that the beneficiary can not recover in covenant in any event, 1st, because there was no covenant made with him, and, 2nd, because no covenant with him is averred in the declaration.

This defense, defendant says, was good on the motion in arrest of judgment, and affects also an instruction offered and refused.

The plaintiff says that covenant will lie; that there is an implication in the certificate of a contract with the plaintiff. These contentions may be considered as raising the first question in this case. We may dispose of it at once by saying that we sustain the position of the plaintiff therein. We think that the argument in its favor is sound and sustained by the reasoning of the Supreme Court in Hartford Ins. Co. v. Olcott, 97 Ill. 439. This court tentatively expressed itself

in the same general sense in Huebner v. Metropolitan Life Ins. Co., 140 Ill. App. 282.

The defendant filed pleas setting up its further defenses. These six pleas, after amendment, set up the defenses following:

The first plea is, that the policy is not its deed. This it attempted to verify by affidavit of the President of the Association, which would have put the plaintiff to proof of the execution. But the jurat is before a notary public of Nebraska, without any certificate that such notary had power to administer oaths. The court ruled on this—following Smith v. Lyons, 80 Ill. 600—that there was no affidavit, and the plaintiff was not obliged to prove execution. The defendant apparently does not claim the affidavit or jurat is good, but at the trial proposed to "amend" the affidavit, which the court refused it permission to do, as not under the circumstances "in furtherance of justice," and this ruling is complained of, and may be said to raise the second question in the case. In this matter also we agree with the position of the plaintiff and the ruling of the trial court. The court, in our opinion, properly denied the motion to "amend" the affidavit. We do not understand exactly what "amending" an affidavit may mean, but even if the motion is to be construed as one for leave to file a new affidavit, it was fairly within the discretion of the trial court to deny it.

The second plea set up that the policy was subject to the by-laws of the defendant, and that *from the date of the policy, Sept. 10, 1901,* to October 13, 1904, being the date of death, there was a by-law which made all the monthly dues from members payable *in advance* on the 1st day of the month and automatically suspending a member who was in default and making his policy void, and that when Emma G. Benjamin died she was in default for $1.40 due on October 1, 1904.

The third plea set up the same thing, except that the amount due is alleged to be $1.85.

On these pleas the pleadings ran to great length and complexity.

The facts seem to be as shown by the evidence, that the by-law in question requiring payment in advance was *not* in force on September 10, 1901, but was adopted in 1904. The plaintiff claims that under the terms of the certificate an amendment to the by-laws, or a new by-law made after the date of the certificate, does not affect it. Under the by-laws as they existed in 1901 the insured was not in default on October 13, 1904, as she had the month of October to pay in.

The court in instructing the jury took the view of defendant that the certificate was subject to amendments or changes made in the by-laws at any time before October 13, 1904; but plaintiff insists that it was not, and also claims that the defendant having falsely pleaded the by-laws as in force Sept. 10, 1901, and that having been traversed by him, no subsequently passed by-law was pleaded or could be considered. The question whether the by-law in the terms pleaded, having been passed in 1904, could affect this policy may be considered the third question in the case. If it should be decided in favor of the plaintiff, it leaves the defendant no defense on these pleas 2 and 3, and the further pleadings growing out of them may be disregarded.

If it should be decided in favor of the defendant, however, as held by the court below, other questions arise from the answers thereto made by the plaintiff, which are the subject of the subsequent pleadings.

Thus, the law of Nebraska requires that amendments to by-laws of an association of this kind to be valid must be filed in the office of the Auditor of Public Accounts of the State of Nebraska. Issues were made whether the by-law in question was an amendment and whether it was filed or not in the Auditor's office before October 13, 1904; and the court by its instructions, while holding that the by-law whenever passed was binding on the insured, if valid, held that default by

the insured under it, even if not waived, would not be a defense or work a forfeiture if the jury found that the by-law was adopted by way of amendment to its by-laws and was not filed with the Auditor of Public Accounts prior to the 13th day of October, 1904 (the date of the death). Questions Nos. 4 and 5 therefore may be considered to be: Was this by-law enacted by way of amendment? And was it filed with the Auditor of Public Accounts of Nebraska prior to October 13, 1904? Or at least, should we disturb the implications of the verdict of the jury on these points?

Further, it was claimed by the plaintiff and set up in the pleadings, that the directors who adopted this by-law were usurpers and had been so adjudged by the Supreme Court of Nebraska, and that in consequence the by-law could not be valid; but the record of the Supreme Court was excluded when offered by the plaintiff, and although the defendant complains of the exclusion of certain evidence bearing on it, it admits that as the record was excluded the effect of any adverse ruling to it on the subject was neutralized, but says that "Should a second trial be ordered, the question would become material." Questions, however, on the pleadings and rulings on evidence arising from this contention can hardly be considered as existing in this case.

But under these pleas 2 and 3 questions concerning the alleged waiver of the suspension or forfeiture provided for by the by-law were raised on subsequent pleadings, which pleadings were carried to unnecessary length. The essential point made by the plaintiff in this branch of the case was that the defendant had on divers occasions received dues from the insured after they became due without insisting on a forfeiture, and thus had led the insured by its course of conduct to believe that her policy would not be forfeited by delay, and waived the by-law. The defendant claims that there is no evidence that the insured ever paid anything after she became delinquent, and if the

amended or changed by-law is held to affect the policy, this question of fact may be considered the sixth question in the case.

But further, the defendant claims that under another by-law found on page 25 of the abstract, it is expressly provided that in accepting and receipting for any moneys from suspended members, the secretaries of subordinate lodges are acting merely as agents for the Supreme Lodge (the defendant here) to obtain reinstatement, and that such secretaries must make a separate report of such payment to the Supreme Lodge, giving date and amount and name; that if any delinquent dues were paid by the insured in this case, they were received by the Secretary of a subordinate lodge, who did not make any such report to the Supreme Lodge; that the Supreme Lodge had no knowledge of any such payment of delinquent dues, and therefore cannot be held to have waived anything. The court held in instruction 3, given at request of plaintiff, that if the defendant had received delinquent dues from the insured without claim or forfeiture, and that such conduct misled the insured, etc., the defendant had waived the right of forfeiture, if it existed. It refused instructions which the defendant tendered to the effect that the defendant could limit and had limited the powers of the local lodge as its agent, so that unless the Supreme Lodge had knowledge of the receipt of prior delinquent dues without claim of forfeiture, it had not waived the forfeiture on October 1, 1904, because of such receipt by the local lodge. Taken together, as related to the pleadings, the evidence and the instructions in the case, question 7 in the cause might seem to be this (were it decided that the insured was delinquent on the date of her death and had previously paid dues when delinquent, which had been received by the Secretary of the local lodge without protest): "Did, under the by-laws of the Union and the law of this State, the receipt of such dues by the local secretary, under the facts

Benjamin v. Bankers' Union of the World, 173 Ill. App. 620.

proven, constitute a waiver by the defendant of the right to claim a forfeiture in this case, and did the court rule correctly on the evidence and instructions about this matter?"

It is not necessary for us to go into the question of the rulings on the pleadings by which the question was raised. The view of the court can be seen from the instructions and rulings on evidence.

The fourth plea was framed to meet the averments of the declaration excusing the proofs of death. The declaration says the defendant in answer to a request of the plaintiff for blanks for proofs refused to give them, declaring that the defendant was not. liable in any event. The plea says that among the terms of the constitution which were conditions of the policy was one that the Board of Directors should pass on death claims, and that the Board of Directors did not refuse to give blanks or say that the defendant was not in any event liable. To this the plaintiff demurred generally and the demurrer was sustained; the court taking the view that the averment of the declaration that the defendant refused blanks and refused to pay, and thereby waived the proofs, was not met by the statement of the plea that the *Directors* have not done so.

The fifth plea merely set up that under the policy proofs of death must be made to the Supreme Lodge and were not so made. A demurrer was sustained to this plea also.

The court held that it did not meet the allegation that the defendant had waived proofs, and therefore admitted said allegation and was no defense. The court therefore instructed the jury that it was not necessary for plaintiff to prove the death or the allegation that defendant had waived the requirements respecting proofs, "because the allegations made by the plaintiff upon those points stand admitted by the pleadings." Whether this view of the fourth and fifth pleas is correct may be, therefore, considered question 8 in the cause.

The sixth plea is of the avoidance of the policy by the default of the insured on October 1, 1904, but alleges in addition to the allegations of the 2nd and 3rd pleas that the *application* provides that neglect to make any payments when due, unless extension had been made in writing by the Supreme President or Secretary, shall make the policy void. The questions raised by the pleadings relating to and subsequent to this sixth plea are the same as those mentioned under the second and third pleas, and do not need individual mention. If the by-law is held not to affect this policy or certificate, there was no default and no further question under this plea. If it should not be so held, the questions are the same as those under Pleas 2 and 3.

There are many particular points raised in the assignments of error on the admission and exclusion of offered testimony and on the instructions given and refused, but they can hardly be considered independent questions in the case. One question, however, on the admission of evidence, which may be noted as question 9, is of great importance.

The defendant claimed that if liable at all, it was liable according to the terms of the certificate only for $1,000, *less* a certain sum, to be calculated on the basis of the following clause in the printing on the reverse of the certificate:

"Should said member die before having lived out his expectancy of life, based on his age at entry according to the American Experience Table of Mortality, there shall be deducted from the Death Benefit hereunder a sum equal to the amount of one payment at the rate paid by the member for each month of the unexpired period of such life expectancy."

To prove that there was a deduction due under this provision, the defendant offered in evidence a certain publication. It was excluded by the court (on various grounds, as the defendant says in his argument), and the court having excluded it instructed the jury that

if the plaintiff recovered his damages must be $1,000, less such arrearages as might be due in the payment of premiums.  The question of whether this exclusion and this instruction as to damages were correct is argued by the respective parties in their briefs.

The actual primary questions in this case seem to us only nine in any view.  All others are subordinate.  But these nine questions, on the first two of which we have already expressed our views, are reduced, in our opinion, to five by a view of the matter which, although it did not apparently commend itself to the court below, seems quite plain to us.  It is involved in our answer to the third question recited in the above analysis, viz:  Did the by-law passed in 1904 affect the policy in question here, issued in September, 1901, so as to place the assured in default because the advance payment of premium for October, 1904, was not made before her death?  We do not think it did.  The express terms of the policy or "certificate of membership" are:

"This policy is issued to and accepted by the holder hereof upon the terms and subject to the conditions set forth in the Constitution and By-laws of this Union, and subject to the conditions and stipulations on the reverse side hereof, all of which are hereby made a part of this contract, as fully as if they were recited at length over the signature hereto affixed."

This was as binding on the Association as it was on the member, and we do not think that in so important a matter as the time given by the by-laws then in existence for the payment of monthly dues a change could be made without the specific consent of the assured, which should place her in default because she did not conform to the more drastic provisions of the amendment.

We think that this view is justified by the reasoning of the opinions of the Supreme Court in Covenant Mutual Life Association v. Kentner, 188 Ill. 431, and Peterson v. Gibson, 191 Ill. 365.

This view on our part renders it unnecessary for us to pass on the questions we have listed as 4, 5, 6 and 7.

It is true that an instruction asked by the plaintiff stating the law on this point as we hold it was refused by the trial court and no cross-error has been assigned but this does not render it the less obvious that if there was no default in the payment of premiums there was no defense made which should work a reversal of this judgment under pleas based entirely on the allegation of such default.

The answer to the eighth question is not difficult. The trial court was plainly right in sustaining the demurrer to the two pleas and in holding the allegation of a waiver by the defendant of proofs of death admitted by the pleadings.

The ninth question concerns, as before stated, the exclusion from evidence of the title page and a portion of another page of a certain book purporting to show the expectancy of life at 51, the age at which the assured in this case became a member of the society and obtained the certificate.

The essential part of the title page offered was, as it appears in the Transcript of the Record:

"Tables for ascertaining the Present Value of Vested and Contingent Rights of Dower, Curtesy, Annuities and of other Life Estates, Damages for Death or Injury by Wrongful Act, Negligence or Default, based chiefly upon the Carlisle Table of Mortality computed and compiled by Florien Giauque, A. M. * * * and Henry B. McClure, A. M., members of the Cincinnati Bar.

        Cincinnati.

                    Robert Clarke & Co.
                        1894.
                    Copyright 1882
                    By Robert Clarke & Co.
                    Copyright 1894
                    By Robert Clarke & Co."

The further matter in this book offered in evidence

was a portion of the 191st page of the same, as follows:

"Table.

Table of Expectancy of Life as shown by the following tables of mortality.

*Explanation.* The names at the heads of the respective columns are the names of various tables of mortality, that is the Carlisle Table of Mortality, the Combined Experience Table of Mortality, etc. For further explanation see Pages 1-8-185-190 and preface this work.

| Age. | American Experience. |
|------|----------------------|
| 51   | 20.91                |
| 54   | 18.09"               |

In connection with this the defendant offered to show by the testimony of the President of the Order that "upon a computation of the deduction from the face of the certificate of membership provided for by the condition on the reverse of the policy in case the member dies before having lived out the expectancy of life at the time of death, that the unexpired portion of the life expectancy of the assured in the certificate in question was 18.09 years, and that the amount due on this policy or certificate of membership would be only $390.95.

This printed matter and this offer were both excluded by the court on the grounds (a) that the declaration in covenant alleging that the defendant would pay to the plaintiff the sum of one thousand dollars, and the defendant not having specially pleaded in denial of this, no evidence was admissible to show the covenant to be for a less sum; and (b) that the essential part of the evidence offered, without which the rest would be irrelevant, was a mere printed statement in a book not shown to be standard, or authorized, and not verified in any manner to state the truth.

The condition found on the back of the policy or certificate is certainly a peculiar one, reducing it in effect from insurance to a savings deposit, and it was not unreasonable to hold that it should be strictly proved if it was to be held valid.

We do not feel called on to pass definitely on the soundness of ground (a), for we think the point (b) was well taken. We do not think that the matter offered was shown to be from, or that there was any sufficient offer to prove that it was from, the ''American Experience Tables of Mortality'' specified in the certificate, or that it was a correct transcript thereof. We do not feel justified in holding the trial court was wrong in its exclusion. Without it there was no basis for the proposed deduction shown, and the further evidence and the instruction on the subject tendered by the defendant were properly refused.

The judgment of the County Court is affirmed.

*Affirmed.*