## BRIGGS v. WILDER.

1. **Trust:** MORTGAGE OF TRUST PROPERTY: GARNISHMENT. Where a person holding property in trust for the payment of a certain judgment, mortgaged it upon his own account, and afterwards sold the property and paid the mortgage, leaving a balance in his hands, it was held that he should have applied the proceeds of the mortgage to reimburse himself for the taxes which he had paid; and that upon garnishment proceedings, in satisfaction of the judgment, he was liable for the full amount in his hands without allowance for the taxes paid by him.

*Appeal from Mitchell District Court.*

SATURDAY, APRIL 22.

IN June, 1864, the plaintiff recovered a judgment against H. C. Lacy and A. J. Wilder for some $800. In 1875 a general execution was issued on the said judgment, and the de-

fendant Frank Wilder was attached as a garnishee of said exe-
cution defendants.    In answer to the statutory questions put
to him as a garnishee, touching his liability, his answer was
in these words, "I am not able to state."

A pleading was filed controverting the answer.    To this
the defendant filed a reply.    Upon the issues thus made the
case was tried to the court without a jury, and a judgment
rendered for the plaintiff.    Defendant appeals.

*D. W. Poindexter*, for appellant.

*Cleland & Eaton*, for appellee.

ROTHROCK, J.—A reversal is claimed upon the single ground
that the judgment of the court is not supported by the evi-
dence.    We will proceed to state the facts, which
we think the court was warranted in finding from
the evidence introduced upon the trial, without
setting out the testimony of the witnesses.    In April, 1865,
the following contract was entered into between H. C. Lacy
and A. J. Wilder:

1. TRUST:
mortgage of
trust property:
garnishment.

"In consideration of Sarah F. Lacy, of Mower county, Min-
nesota, having conveyed to Frank Wilder, of Mitchell county,
Iowa, the southeast quarter, section 17, town 103, range 17,
I, A. J. Wilder, of Mitchell county, Iowa, agree to pay a cer-
tain judgment obtained at the October term of the District
Court of Mitchell county, Iowa, wherein a judgment was ob-
tained upon a certain promissory note made by H. C. Lacy,
with A. J. Wilder as surety, to George Briggs, of said county
of Mitchell; which said note was sued in the District Court
of Mower county, Minnesota, and a judgment obtained thereon,
as shown by the records thereof,"

[ Signed ]                          A. J. WILDER.

Dated at Austin, Minnesota, April 28, 1865

Frank Wilder, to whom the conveyance of the land was
made, was the son of A. J. Wilder, and after the conveyance
was made to him, and before he had made any incumbrance

upon or disposition of the land, he knew that Lacy had caused the conveyance to be made to him for no other consideration than that his father should pay the judgment of Briggs.    Negotiations took place from time to time between Briggs and defendant, and also between Briggs and A. J. Wilder, by which Briggs was to take the land in satisfaction of the judgment or in part payment of it, and because of a failure to agree upon the price of the land, these negotiations failed.    Frank Wilder continued to hold the title, and in February, 1872, he mortgaged the land to secure a loan of $500.    This money he received on his own account.    In Nov., 1872, he received a letter from his father, who had removed to Missouri, directing him to convey 80 acres of the land to his sister, Mrs. Campbell, and to sell the other 80 acres, keep the taxes up, and if he should sell, to take his (Frank's) pay out and let his brother Charles have the balance.    In June, 1873, he conveyed 80 acres of the land to his sister, Mrs. Campbell, and in September, 1874, he and Mrs. Campbell contracted to sell the whole quarter-section to one Gillet for $1,200.    Gillet paid the mortgage of $500, and gave two mortgages, one to Mrs. Campbell for $350, and one to defendant for a like amount.    Afterwards the defendant paid to Mrs. Campbell and to his brother Charles each $250 as he claims to make up the amount of the mortgage which he had put upon the land.    This left $350 of the proceeds of the land in the defendant's hands.    It was for this amount, with interest, that the court rendered a judgment.    The defendant paid taxes upon the land, and redeemed from a tax sale.    The greater part of these payments were made before he borrowed the $500, which he secured by a mortgage on the land.    It is claimed that the taxes paid by him should be set off against the $350 and interest found to be in his hands.    In view of all the facts in this case we think the court was warranted in refusing to allow the set-off to be made.    Frank Wilder well knew that Lacy had caused this land to be conveyed to him in consideration that A. J. Wilder would pay the judgment.    A. J. Wilder did nothing of the

kind. Can there be any doubt that, upon the failure of A. J. Wilder to perform his contract, Lacy could have, by proper proceeding, pursued the land, the title of which was in the defendant, and caused it or the proceeds of it to be subjected to the payment of the judgment?

Frank Wilder held the land in a certain sense as a trustee. Both he and his father treated it as such. Defendant even wrote a letter to Briggs, in which he stated to him that if he did not take the land he would deed it back to Lacy. Lacy was the person to whom it should have been conveyed, if not sold and the proceeds applied on the judgment. We think when the defendant mortgaged the land on his own account he should have applied the proceeds of the mortgage to reimburse himself for taxes which he had paid, and that as he knew that he held the title to this land for the purpose of using it in paying the judgment, he is liable for at least the amount found in his hands when he was garnished.

AFFIRMED.