SYNDICATE INS. CO. v. BOHN et al. NEW HAMPSHIRE FIRE INS. CO. v. SAME. SAME v. NATIONAL LIFE INS. CO. SYNDICATE INS. CO. v. SAME.

(Circuit Court of Appeals, Eighth Circuit. December 3, 1894.)

Nos. 434–437.

1. FIRE INSURANCE—INTEREST OF INSURED.
Provisions in policies of insurance to the effect that the policies shall be void if the interest of the insured is not the sole and unconditional ownership of the property described in the policies, or if that interest is not truly stated to the companies or in the policies, or the indorsements thereon, constitute a complete defense to actions by the sole stockholders of a corporation upon the policies issued to themselves, as owners, upon property owned by the corporation.

2. SAME—INTEREST OF MORTGAGEE—UNION MORTGAGE CLAUSE.
The effect of the "union mortgage clause," providing, among other things, that the insurance, as to the interest of the mortgagee, shall not be invalidated by any act or neglect of the mortgagor, nor by any change in title or possession, provided the mortgagee shall notify the company of any change coming to the mortgagee's knowledge, and that when the company shall pay the mortgagee for a loss, and claim that no liability existed as to the mortgagor, it shall be subrogated to all rights of the mortgagee under securities held, when such clause is attached to an existing policy of insurance running to the mortgagor, is to make a new and separate contract between the mortgagee and the insurance company, and to effect a separate insurance of the interest of the mortgagee, dependent for its validity solely upon the course of action of the insurance company and the

mortgagee, and unaffected by any act or neglect of the mortgagor, of which the mortgagee is ignorant, whether such act or neglect was done or permitted prior or subsequent to the issue of the mortgage clause.

In Error to the Circuit Court of the United States for the District of Nebraska.

These were four actions by William G. and Conrad Bohn and the National Life Insurance Company, of Montpelier, Vt., against the Syndicate Insurance Company, of Minneapolis, Minn., and the New Hampshire Fire Insurance Company, upon policies of insurance. Upon the trial in the circuit court, judgment was rendered for the plaintiffs in all the actions. Defendants bring error.

A. S. Churchill, for plaintiffs in error.

B. G. Burbank, for defendants in error William G. Bohn and Conrad Bohn.

Charles Offutt (James B. Meikle, on the brief), for defendant in error National Life Ins. Co.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. Are the sole owners of the capital stock of a corporation, who have procured policies of insurance against fire, running to themselves, in their individual names, upon a building, the title to which was in the corporation, debarred from any recovery on the policies by the provisions therein to the effect that the policies shall be void if the interest of the assured is not the sole and unconditional ownership of the property described, or if that interest is not truly stated to the companies, or in the policies or in the indorsements thereon? If so, is a mortgagee whose interest is insured by the "union mortgage clause" attached to such policies also debarred from any recovery by these provisions of the policies? These are the principal questions presented in these cases. They were raised by separate exceptions to the refusal of the court below to instruct the jury to return a verdict in favor of either of the plaintiffs in error in any of these cases at the close of the trial, when the evidence established the following undisputed facts:

In 1888 the defendants in error William G. Bohn and Conrad Bohn were the owners in fee simple of the building destroyed, and the lot on which it stood. Mr. Doud, the agent of the plaintiff in error the Syndicate Insurance Company, solicited their insurance, and William G. Bohn, one of the defendants in error, told him that he and Conrad Bohn were the owners of the building, and directed him to insure it in the companies he represented, in their names. Thereupon he issued to them a policy of the Syndicate Insurance Company, for the sum of $5,000, for the term of one year, covering this building, and delivered it to the Bohns. In October, 1888, they mortgaged the insured property to the defendant in error the National Life Insurance Company, for $25,000, and covenanted in the mortgage to keep it insured for that amount for the benefit of the mortgagee. Thereupon the policy of the Syndicate Insurance Company was presented to its agent,

and, at the request of the Bohns and the mortgagee, he attached to this policy the union mortgage clause, and delivered it to the mortgagee. That mortgage clause reads as follows:

"It is hereby agreed that any loss or damage that may be ascertained and proved to be due under this policy to the assured shall be held payable for the account of said assured to the National Life Insurance Co., mortgagee or beneficiaries, or its assigns, subject to the following stipulations: (1) It is agreed that this insurance, as to the interests of the above-named mortgagee or beneficiary, or its assigns, only, shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured, nor by the occupancy of the premises for purposes more hazardous than are permitted by the terms of this policy, nor by any change in title or possession, whether by legal process, voluntary transfer, or conveyance of the premises, or for nonoccupation of the premises: provided, that the mortgagee or beneficiary shall notify this company of any change of ownership or increase of hazard which shall come to the knowledge of said mortgagee or beneficiary, and shall have permission for such change of ownership or such increased hazard, as shall come to his notice, duly indorsed on this policy: and provided, further, that every increase of hazard not permitted to the mortgagor or owner shall be paid by the mortgagee or beneficiary, on reasonable demand, and after demand made by this company upon and refusal by the mortgagor or owner to pay, according to the established scale of rate; the company reserving the right to cancel the policy at any time on the terms in said policy provided, on giving to the mortgagee ten (10) days' notice of their intention so to do, and after such ten (10) days the policy and this agreement shall be void. The foregoing stipulations, however, shall not be held, under any circumstances, to modify the terms of contribution provided in the printed conditions of this policy, in case of other insurance on the same property; it being expressly understood that this insurance is upon the interest of said mortgagor or owner, or assigns, and that other insurance on the interest of said mortgagor or owner, or assigns, is to contribute according to said conditions. (2) It is also agreed that whenever this company shall pay to the mortgagee or beneficiary any sum for loss under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed, it shall at once, and to the extent of such payment, be legally subrogated to all the rights of the party to whom such payment shall be made, under any and all securities held by such party on the property in question, for the payment of said debt. But such subrogation shall be in subordination to the claim of said party for the balance of the debt so secured, or this company may, at its option, pay to said mortgagee or beneficiary the whole of the debt so secured, including such sums as said mortgagee or beneficiary may then have paid for taxes or fire insurance upon the property described in such mortgage or trust deed, pursuant to the terms thereof, with all interest that may have accrued thereon to the date of such payment, and shall thereupon receive from the party to whom such payments shall be made an assignment and transfer of said debt, with all the securities held by said party on the property in question for the payment thereof. If the above-named mortgagee should assign this mortgage, the above agreement shall be binding between said insurance company and the assigns without notice to said insurance company of said assignment."

The original policy of the Syndicate Insurance Company, and the policy here in suit, insured the Bohns against loss or damage by fire to "their four-story brick warehouse  *  *  *  situated on tax lot 12, Omaha, Neb.,  *  *  *  not exceeding the sum insured, nor the interest of the assured therein," and contained the following provisions:

"The assured, by the acceptance of this policy, hereby covenants and agrees (1) that any application, plan, survey, or description referred to in this policy is true, and shall be and form a part of this policy; that no fact material to the risk, or relating to its condition, situation, or ownership, has been concealed; and that the interest of the assured therein has been truly stated to

this company. (If the interest of the assured be other than the unconditional and sole ownership of the property, or if the building insured stands on leased ground, it must be so expressed in the policy.)" "This policy shall become void and of no effect (1) by the failure or neglect of the assured to comply with its terms, conditions, and covenants; (2) by the sale or transfer, or any change in the title or possession of the property insured (except in case of succession by reason of death of the assured), whether by legal process or judicial decree, or voluntary transfer or conveyance."

In May, 1889, the Bohns conveyed the building insured, and the lot on which it stood, by warranty deed, subject to the $25,000 mortgage, to the Bohn Sash & Door Company, a manufacturing corporation, the capital stock of which they owned; but this fact was unknown to all the other parties to these actions until after the fire. About the 1st of September, 1889, Mr. Doud, the agent of the Syndicate Company, inquired of the Bohns whether he should renew the policies he had issued on this building, and they directed him to do so; and thereupon he issued a new policy of the Syndicate Company for the term of one year, and delivered it to the mortgagee. He told the Bohns that he had lost the agency of one of the companies that had issued a policy to them the year before, and that he was not the agent of the New Hampshire Fire Insurance Company, but that he proposed to place $2,500 with that company, and they authorized him to do so. He then told the agents of that company that the Bohns owned the building, and directed them to issue in their name a policy of that company, for $2,500, for one year, and to attach the union mortgage clause to it. They did so, and the policy was delivered to the mortgagee. About the 1st of September, 1890, Mr. Doud again inquired of the Bohns if he should renew the policies. They authorized him to do so, and he issued the policy of the Syndicate Company, and procured the issue of the policy of the New Hampshire Company, here in suit. The policy of the plaintiff in error the New Hampshire Fire Insurance Company declares that that company insures William G. and Conrad Bohn against loss or damage by fire, except as thereinafter provided, to an amount not exceeding $2,500, "on their four-story brick warehouse, situate on tax lot 12, Omaha, Neb.," and provides that:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance, or the subject thereof, or if the interest of the insured in the property be not truly stated herein." "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple."

The building insured was destroyed by fire May 12, 1891. It was then worth $34,000. The amount of insurance upon it under these and similar policies, payable to the mortgagee under the mortgage clause we have set forth above, was $25,000, but payments had been made upon the mortgage debt until there was only about $21,000 owing upon it. The two policies here in suit contained the usual contribution clause. The mortgagee, the National Life Insurance Company, and the Bohns, brought separate actions upon each of these policies. These actions were consolidated by order of the court,

and tried to the same jury. The mortgagee recovered a judgment against each of the plaintiffs in error for such a proportion of the amount owing on the mortgage debt as the amount of its policy bore to the $25,000 insurance, and the Bohns recovered a judgment against each of them for the remainder of the amount of the face of their policies respectively. These are the four judgments before us for review. Can they be sustained? Let us first look at the judgments in favor of the Bohns.

By the provisions of these policies which we have quoted, the Bohns made plain contracts with the insurers that they had truly stated their interest in the property insured, and that if that interest was not the sole and unconditional ownership of that property the policies should be void. At the time these policies were issued, and at the time of the fire, they were neither the sole and unconditional owners of this property, nor had they any legal title to it, or any equitable title that they could convert into a legal title. The legal title was in a corporation, and they were mere stockholders in that corporation. They could not convey or incumber the title to this property by their deed or mortgage, nor could the title to it be passed or affected by any sale of their interest in it under judgment and execution against them. Stockholders of a corporation are entitled to a distributive share of its profits while it continues in operation, and, at its dissolution, to a just proportion of the proceeds of the corporate assets remaining, if any, after all the corporate debts are paid, but they are far from being the unconditional owners of the property of the corporation. The title and ownership of such property is vested in the corporation itself,—in an entity as distinct and separate from its stockholders as is any individual trustee from his cestui que trust. The corporation itself can sell, convey, mortgage, and deal with the corporate property as its own, subject only to the restrictions of its charter, while its stockholders can do none of these things. These stockholders were not, therefore, the sole or unconditional owners of the property described in these policies. Riggs v. Insurance Co., 125 N. Y. 7, 25 N. E. 1058; Plimpton v. Bigelow, 93 N. Y. 593; Van Allen v. Assessors, 3 Wall. 573; McCormick v. Insurance Co., 66 Cal. 361, 5 Pac. 617; Philips v. Insurance Co., 20 Ohio, 174, 184.

It is not unworthy of notice here that one of the errors assigned in this record is that the court below excluded evidence of the insolvency of the Bohn Sash & Door Company at the time of the fire. This would have been a fatal error, if it could be conceded that the interest of the Bohns, as stockholders, was insured by these policies. The insurance companies were not liable, in any event, to pay to the Bohns any more than the loss that resulted to their interest from this fire. The extent of that loss was much less if the corporation was insolvent, if the amount of its debts was greater than the value of its assets, and if its stock was consequently worthless, than if the value of its assets exceeded its debts by the par value of its stock, as the court seems to have conclusively presumed.

But we are unable to conclude that the interest of the Bohns, as stockholders of this corporation, was insured by these policies. These

are not cases in which the assured has fully stated the condition of his title at the time the policies issued, and an inadequate or incorrect description of that interest has been made, through some fault or neglect of the agent of the insurance companies. When the policy of the Syndicate Company was issued, in 1888, one of the Bohns informed the agent of the company that they were the owners of the building, and directed him to issue the policies in their names. The policies were so issued and delivered to them. The Syndicate policy then issued contained the same provisions found in that now in suit, and the Bohns must. be conclusively presumed to have read and to have assented to the contracts these provisions contained. The order that they gave in 1889 to renew their policies, and to procure a new policy from the New Hampshire Company, without giving any notice of the conveyance of the property they had made, or of any change in their interest or title, was an order to procure the new policy, and to issue the renewals on the faith of the original representation they had made, and on the same terms upon which the original policies were issued. The subsequent order for renewals in 1890 was of like character. These orders were in effect reiterations in 1889 and 1890 of the original statement that they were the owners of the property, and as they gave no notice of their conveyance of it, or of any change in their interest, the agent· and the companies were clearly entitled to rely upon that statement.

These contracts are neither novel nor peculiar. Contracts practically identical in legal effect are, and have been for many years, common to nearly all policies upon buildings. Their terms are so familiar to insurers and insured that a policy upon a building, that did not contain some of them would be nearly as unique as a decree of an English court in Norman French in this decade. Nor are they unjust, unreasonable, or unfair contracts. They rest upon a sound policy of the business of insurance,—a policy founded in reason, and in accord with an enlightened public policy; the policy of reducing the moral hazard to which the underwriter is exposed. "Moral hazard," in insurance, is but another name for a pecuniary interest in the insured to permit the property to burn. Statistics, experience, and observation all teach that the moral hazard is least when the pecuniary interest of the insured in the protection of the property against fire is greatest, and that the moral hazard is greatest when the insured may gain most by the burning of the property. Take the case at bar. The property described in these policies that was destroyed by fire was worth $34,000. It was insured for $25,000, payable to a mortgagee whose interest was but $21,000. If the Bohns had been the owners of this property, and had recovered the entire $25,000 insurance, they would have lost $9,000 by the fire. But suppose that the corporation that owned the property was insolvent, as the plaintiffs in error offered to prove, and that the stock of. the Bohns was worthless. In that. event, if they could recover on all of these policies, they would make a clear profit of $4,000 by the burning of this building, after their mortgage debt was paid. It goes without saying that the moral hazard—the danger that the property would burn—was vastly greater in the latter than in the

former case, and the fact that the Bohns were not the owners of the property insured, but were mere stockholders of a corporation that did own it, was very material to this risk. If there could be any doubt of this fact, the evidence in this record is full and undisputed that the risk was greater, and the rate of insurance higher, for the insurance of stockholders against the destruction of corporate property than it was for the insurance of the owners of that property.

It is contended that the contracts in these policies, which exclude the Bohns from insurance under them upon any interest but that of unconditional ownership, are without binding force, because no inquiry respecting their title was made by the companies, and no statement concerning it was made by the Bohns, when these policies were issued. But neither inquiry nor statement before the issue of the policies was requisite to the validity of these contracts. The policies themselves, containing, as they did, the contracts that they should be void if the interest of the assured had not been truly stated to the company, or if it was not truly stated in the policy, or if it was not the sole and unconditional ownership, and a description of it was not indorsed on the policy, were pointed inquiries of the assured whether their interest was the sole and unconditional ownership of the property described, and their silence and acceptance of the policies was the answer. The policies themselves were notice to the Bohns that the companies deemed their interest that of unconditional ownership, that they insured them against loss to that interest only, and that they expressly excluded every other interest from the insurance unless the Bohns immediately notified them that they held a different interest, and caused a true description of it to be written into or indorsed upon the policies. The silent acceptance of the policies by the Bohns closed these contracts, and bound them to the agreement tendered by the policies, that every interest of theirs but that of unconditional ownership was excluded from the promised indemnity. Insurance Co. v. Lawrence, 2 Pet. 25, 49; Waller v. Assurance Co., 10 Fed. 232; Collins v. Insurance Co., 44 Minn. 440, 46 N. W. 906; Lasher v. Insurance Co., 86 N. Y. 423, 427; Weed v. Insurance Co., 116 N. Y. 106, 113, 22 N. E. 229; Diffenbaugh v. Insurance Co., 150 Pa. St. 270, 24 Atl. 745; Fuller v. Insurance Co., 61 Iowa, 350, 16 N. W. 273; Waller v. Assurance Co., 64 Iowa, 101, 19 N. W. 865; Mers v. Insurance Co., 68 Mo. 127, 132; McFetridge v. Insurance Co. (Wis.) 54 N. W. 326; Henning v. Assurance Co. (Iowa) 42 N. W. 308; Insurance Co. v. Boulden (Ala.) 11 South. 771; Insurance Co. v. Smith, 92 Ala. 428, 9 South. 327.

Finally it is said that the plaintiffs in error are estopped from enforcing, and have waived, these provisions of the policies, because, after they had heard a rumor that the Bohns had conveyed the property, and after the latter had furnished proofs of loss under the policies, the insurance companies demanded that they should submit to an examination under oath, as provided by the policies, and that they should produce papers, vouchers, and plans and specifications for the building destroyed, and pursuant to these demands the Bohns incurred the expense of employing an attorney to attend such an examination, that was never had. This position is untenable,

for two reasons: First, because there is no evidence in this record that would warrant a finding by a jury that when the companies made these demands they knew that the Bohns were not the unconditional owners of the property at the time of the fire, and no estoppel or waiver could arise from any action of theirs in ignorance of that fact; and, second, because in proofs of loss, which were required by the terms of the policies to be verified by the oath of the assured, and which were sworn to April 8, 1891, and were furnished to the companies under the provisions of the policies, the Bohns falsely stated "that the property insured was owned in fee simple by the said William G. Bohn and Conrad Bohn." After such a statement under oath, it does not lie in the mouths of these men to say that the companies are estopped from enforcing these contracts, or that they waived them, because they hesitated for a time to believe that this oath was false, or were induced by it to proceed for a time as though it was true. There was no estoppel or waiver here.

The contracts contained in the provisions of these policies we have been considering were, then, such as it was customary to make in cases like those before us. The Bohns themselves had made such contracts twice, before the policy in suit was issued, with one of the plaintiffs in error, and once with the other. The object of these contracts was one fit to be attained. It was the reduction of the moral hazard in fire insurance, and the consequent reduction of the unnecessary destruction of property. The contracts were fair, plain, and unequivocal. By their very terms, they excluded the Bohns from all insurance under these policies unless they were the sole and unconditional owners of the property they described. They were not the owners of it at all. They had neither the legal title, nor any equitable title that they could convert into a legal title. It is not the province of the court to abrogate, to modify, or to refine away these contracts, nor to make new contracts for the parties; and these contracts, as they stand, form an impregnable defense to the actions against these insurance companies brought by the Bohns. The court should so have instructed the jury.

Our conclusion is that provisions in policies of insurance to the effect that the policies shall be void if the interest of the insured is not the sole and unconditional ownership of the property described in the policies, or if that interest is not truly stated to the companies, or in the policies, or in the indorsements thereon, constitute a complete defense to actions by the sole stockholders of a corporation upon policies issued to themselves, as owners, upon property owned by the corporation.

Let us now turn to the judgments in favor of the mortgagee. Are these provisions of the policies alike fatal to any recovery in its behalf? The plaintiffs in error insist that they are. They say that the only interest insured here is that of the mortgagors; that the mortgage clause simply makes the proceeds of that insurance payable to the mortgagee to the extent of the mortgage debt; that the facts that the balance of the proceeds belong to, and all of these proceeds, if the debt is paid by the mortgagors, revert to, the mortgagors, and the very terms of the first sentence of the mortgage clause, viz. "It is

agreed that any loss or damage that may be ascertained and proved to be due under this policy to the assured shall be held payable for the account of the assured to the National Life Insurance Company, mortgagee, or beneficiaries, or its assigns, subject to the following stipulations," limit the mortgagee's right to recover to such amounts as became due or payable to the assured, the Bohns, for damage to their interest in the property; and that inasmuch as they had no interest insured, and no amount ever became due or payable to them, nothing ever became due to the mortgagee. It is not difficult to dispose of this argument. It proves too much. If it were sound, the mortgagee could not recover if, after a valid policy, with the mortgage clause attached, had been delivered to the mortgagee, the mortgagors had conveyed or burned the property or violated any of the material provisions of the policy as to the occupancy or use of the premises. But one of the "following stipulations," to which the first sentence of this mortgage clause is "subject," is that this insurance, as to the interest of the mortgagee only, "shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured"; and it is too clear and too well settled to admit of discussion that no act or neglect of the mortgagors, done or permitted after the policies and mortgage clauses were delivered to the mortgagee, although fatal to the mortgagor's recovery, could deprive the uninformed mortgagee of its indemnity. City Five Cents Sav. Bank v. Pennsylvania Ins. Co., 122 Mass. 165; Insurance Co. v. Floyd, 19 Hun, 287; Insurance Co. v. Olcott, 97 Ill. 439, 455. But the plaintiffs in error say that, although the indemnity of the blameless mortgagee is protected by this contract against any act or neglect of the mortgagors subsequent to the issue of the mortgage clause, yet any prior act or neglect of theirs, which excludes their interest from insurance under the policies, precludes the mortgagee from obtaining any indemnity under this mortgage clause. Before we assent to a construction of this contract so narrow and subtile, it will not be uninstructive to notice the history and purpose of this clause, and the situation of these parties when they made it their contract. We all know that 20 years ago a contract between a mortgagee and an insurance company, like that before us, was novel and rare. At that time the customary method of indemnifying the mortgagee against loss by fire was to indorse upon the policy the words, "Loss, if any, payable to ———, mortgagee, as his interest may appear," or words of similar import. To-day such an indorsement is rare, and a contract similar to the mortgage clause before us is in general use. Why this change? The reason is not far to seek. The old indorsement made the mortgagee a simple appointee of the mortgagor, and put his indemnity at the risk of every act or neglect of the mortgagor that would avoid the original policy in his hands. Baldwin v. Insurance Co., 60 N. H. 164; Martin v. Insurance Co., 38 N. J. Law, 140; Insurance Co. v. Maackens, Id. 564. Indemnity so precarious, so liable to be destroyed by the ignorance, carelessness, or fraud of the mortgagors, was not satisfactory to the mortgagees; and they proceeded to make contracts with the insurance companies similar to that before us, for the purpose of securing indemnity to

their interests that should not be affected by any act or negligence of the mortgagors.

In 1878 one of these contracts came before the court of appeals of the state of New York in Hastings v. Insurance Co., 73 N. Y. 141, 150, 154, for judicial interpretation. It was a mortgage clause attached to an original policy running to the mortgagor, and, so far as the question we are now considering is concerned, the terms of that clause were identical with those contained in the contract before us. It provided that "this insurance, as to the interest of the mortgagee only, shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured." The original policy contained a contribution clause to the effect that, if there was any other insurance on the property, whether prior or subsequent to the issue of the policy, the assured should be entitled to no greater proportion of the loss sustained than the sum thereby insured bore to the whole amount of insurance on the property. The mortgage clause contained no such provision. Before either the policy or the mortgage clause was issued, the mortgagor had procured $4,000 insurance on the same property in another company, but neither the insurance company nor the mortgagee was aware of this fact until after the loss. The question presented was whether or not the mortgagee's insurance was reduced, under the contribution clause of the original policy, by the prior insurance obtained by the mortgagor. The court held that it was not; that the mortgage clause constituted a new and independent contract between the mortgagee and the insurance company, and effected a separate insurance of his interest, unaffected by any act or neglect of the mortgagor, of which he was ignorant, whether that act or neglect was prior or subsequent to the issue of the mortgage clause. In 1882, in Meriden Sav. Bank v. Home Ins. Co., 50 Conn. 396, the question arose whether or not a mortgagee, who had made a collateral agreement with the insurance company, similar in terms to the mortgage clause before us, as to all the insurance policies of that company which the mortgagee held, could maintain an action on that agreement, and a policy referred to therein, without joining the mortgagor; and the supreme court of Connecticut held that it could, cited Hastings v. Insurance Co., supra, with approval, and declared that, while they would not then hold that the collateral agreement was a distinct and independent contract of insurance, it was "an agreement relating to an existing policy, by which certain conditions are dispensed with, and certain privileges are secured to the insurers which they would not otherwise have, and the plaintiffs are made a party to the contract of insurance." In 1883, in Davis v. Insurance Co., 135 Mass. 251, a case arose in which a mortgagor, whose policies provided that they should become void if the property was sold or transferred, had sold and conveyed the property insured during the term of his policies, and the mortgagees had subsequently entered and taken possession of it for default in the payment of the mortgage debt. The mortgagees knew that the mortgagor had conveyed away the property, and without stating this fact to the

insurance company, and upon a statement of their entry for default and possession only, and without paying any additional premiums, they procured indorsements on the policies substantially identical with the mortgage clause in question, with this exception, viz. these indorsements commence with this recital: "Davis, Taylor, and Demmon, the parties to whom this policy is payable in case of loss, being mortgagees, have entered for breach of the conditions of their said mortgage." The supreme judicial court of Massachusetts held that this recital indicated that it was not the intention of the parties to these indorsements to insure the interest of the mortgagees, as such, but to insure to the mortgagees, as owners, the interest the mortgagor originally had, on the supposition that the entry and possession had transferred that interest to the mortgagees in the same way that a sale of the premises by the mortgagor while he owned them, and the assignment of the policies, would have done, and that inasmuch as the mortgagor had no interest in the property, and no insurance upon it, at the time the mortgagees entered and took the possesion, the mortgagees obtained none. That court further held that, if the indorsements could be construed as an insurance of the interest of the mortgagees, they were without consideration, and did not bind the insurance company.

We have reviewed the two cases last adverted to at some length, because they are the only cases which treat of this mortgage clause that have been called to our attention by the counsel for the insurance companies in support of his contention, or that are claimed by him to be in conflict with the decision of the New York court of appeals in Hastings v. Insurance Co. As we have seen, these two cases are not in conflict with that decision. The courts that rendered these decisions neither considered nor decided the question presented in the New York case. On the other hand, the decision in that case has been uniformly cited with approval in every case in which any question concerning the construction of this mortgage clause has arisen, from 1878 to the present time. City Five Cents Sav. Bank v. Pennsylvania Ins. Co., 122 Mass. 165; Insurance Co. v. Floyd, 19 Hun, 287; Insurance Co. v. Olcott, 97 Ill. 439, 455. And it has lately been followed upon the precise question here at issue by the supreme court of South Dakota in Ormsby v. Insurance Co., 58 N. W. 301, 302. What, now, was the situation and relation of the parties to this contract in the case at hand when this mortgage clause was issued? During the 10 years which followed the announcement of the decision in Hastings v. Insurance Co., supra, the old form of indorsement, "Loss, if any, payable to ———, mortgagee, as his interest may appear," gradually disappeared from the face of insurance policies, and this mortgage clause, or a similar contract, took its place. That decision had settled that in New York, at least, such a clause protected the mortgagee against any act or neglect of the mortgagor, whether prior or subsequent to its issue. That decision had been repeatedly approved by courts of high rank, and never disapproved. Under these circumstances, the Bohns, in 1888, mort-

gaged the building insured, and the lot on which it stood, to the defendant in error the National Life Insurance Company, for $25,000, and, in part consideration for the loan thus procured, covenanted to keep the building insured, for the benefit of the mortgagee, in such companies, and by such a mortgage indemnity clause, as the mortgagee should select. Pursuant to that covenant, the mortgagors did procure and deliver to the mortgagee in October, 1888, policies of insurance, in their own names, to the amount of $25,000, with this union mortgage clause attached, for the benefit of the mortgagee. One of these policies, together with this mortgage clause, was issued by the plaintiff in error the Syndicate Fire Insurance Company. This insurance was valid in its inception. It ceased, however, to insure the mortgagors in May, 1889, because they then conveyed the property insured to the corporation; but, as to the mortgagee, it remained in force until the fall of 1889, when these contracts of indemnity expired by limitation. The mortgagors then procured a renewal policy from the Syndicate Company, and a new policy from the plaintiff in error the New Hampshire Fire Insurance Company, for the term of one year, with this mortgage clause attached to each, and delivered them to the mortgagee, and at the end of that year they procured and delivered to the mortgagee the policies and mortgage clauses here in suit. It is true that the Bohns paid the premiums for this insurance, but a promise to pay or indemnify is no less binding when the consideration is paid by a third party than when it comes directly from the payee or the insured. Insurance Co. v. Olcott, 97 Ill. 439, 454, and cases there cited. The agreement evidenced by this mortgage clause was therefore a valid contract between the mortgagee and the insurance companies, made upon sufficient consideration, for the evident purpose of protecting the indemnity guarantied to the mortgagee by these companies against destruction by any act or neglect of the mortgagors. Was it that contract that the indemnity of the mortgagee should not be protected against any prior act or negligence of the mortgagors? There is no such restriction in the contract. It provides that the mortgagee's interest shall not be invalidated by any act or neglect of the mortgagors, by any occupancy or vacancy, or by any change of title or possession of the premises, provided that the mortgagee shall notify the insurance company of any change of ownership or increase of hazard that may come to its knowledge, shall have permission therefor indorsed on the policy, and shall pay for it. It provides that when the insurance company pays to the mortgagee any loss under the policy, for which it claims that no liability to the mortgagors existed, it shall be legally subrogated to all the rights of the mortgagee, in subordination to the mortgagee's claim for the balance of its debt, or that it may, at its option, pay the entire debt of the mortgagee, and take an assignment to itself of all the securities. And it finally provides that, if the mortgagee assigns the mortgage, the agreement contained in the mortgage clause shall be binding between the insurance company and the assigns, without no-

tice to the insurance company of the assignment. What apter terms could be chosen to effect a separate insurance on the interest of the mortgagee, to free that insurance from any possible influence of any act or neglect of the mortgagors, and to make it dependent solely on the course of action of the mortgagee and the insurance company? None occur to us. And these terms are found in a contract between the mortgagee and the insurance company. They secure to the insurance company certain rights in the contemplated contingency that the mortgagee's contract of insurance may be valid when that of the mortgagors is void, and they expressly provide that this contract shall run with the mortgage. When this mortgage clause was attached to the policies in suit, it had been introduced and generally adopted by insurance companies and mortgagees to secure indemnity to the latter. The purpose of its introduction and adoption had been to protect that indemnity against every act and neglect of the mortgagors, whether prior or subsequent to the issue of the mortgage indemnity clause. Ten years before, the highest judicial tribunal of the state of New York had declared that a mortgage clause which contained these provisions accomplished that purpose, and every court whose attention had been called to the question had approved that decision. Under these circumstances, the mortgagee and the insurance companies in these cases selected a mortgage clause that contained these identical provisions, and made it their contract. The inference is irresistible that they intended to, and that they did thereby, agree that no act or neglect of the mortgagors, unknown to the mortgagee, whether prior or subsequent to the date of this contract, should avoid it. Moreover, these insurance companies cannot now be heard to say that these contracts were void in their inception, as to the interest of the mortgagee. They tendered to this mortgagee their own policies running to third parties, and their contracts with the mortgagee that these policies should not be invalidated by any act or neglect of those parties. The policies had been issued by themselves, and any third party had the right to rely upon their statement as to the validity of their own policies. The policies certainly could not be invalidated unless they were then valid, and the tender of them to this mortgagee as contracts of insurance of its interest as mortgagee, with promises that they should not be invalidated, was a clear representation to the latter that those policies were then valid. The mortgagee undoubtedly relied upon this representation, and on the faith of it accepted the policies and the mortgage clauses as binding agreements of indemnity. If the insurance companies had notified this mortgagee at any time before the loss that the original policies were or might have been invalid at the inception of the contracts between them, the latter would undoubtedly have surrendered the contracts, and sought insurance elsewhere. They waited until the loss had occurred, and it is now too late for them to retract their representa-

tions. They are estopped to deny the truth of their statement, to the manifest injury of the mortgagee.

Our conclusion is that the effect of the union mortgage clause, when attached to a policy of insurance running to the mortgagor, is to make a new and separate contract between the mortgagee and the insurance company, and to effect a separate insurance of the interest of the mortgagee, dependent for its validity solely upon the course of action of the insurance company and the mortgagee, and unaffected by any act or neglect of the mortgagor, of which the mortgagee is ignorant, whether such act or neglect was done or permitted prior or subsequent to the issue of the mortgage clause.

In view of this conclusion, a careful examination of the records discloses no prejudicial error in the trial of the cases between the mortgagee and the insurance companies, and the judgments in those cases must be affirmed. The two judgments in favor of William G. Bohn and Conrad Bohn against the plaintiffs in error, respectively, must be reversed, and the cases remanded, with directions to award a new trial, and it is so ordered.