No. 19,708.

CHARLES KENT ROYLANCE, ET AL., UNDERWRITERS AT
LLOYD'S *v*. CITIZENS SAVINGS BANK.
(366 P. [2d] 557)

Decided November 20, 1961.   Rehearing denied December 18, 1961.

Messrs. WELLER, FRIEDRICH and HICKISCH, Mr. WIL-
LIAM H. HAZLITT, for plaintiffs in error.

Messrs. ENOS, BUCHLER & DEISCH, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

WE will refer to the parties as follows: Plaintiffs in error as Underwriters, and defendant in error as the bank. The action was commenced by the bank upon a claim for money allegedly due under a mortgagee's "loss payable" clause of an insurance policy issued by Underwriters.

It was alleged in the complaint that on July 16, 1958, Ferd P. Kline owned a 1955 Mack Diesel Tractor and that on August 20, 1958, plaintiff had a chattel mortgage on it securing a note on which, as of March 8, 1959, the sum of $7,875 was due and owing; that Underwriters on or about July 16, 1958, issued a "Certificate of Insurance" to the said Kline; that a loss payable clause was issued to plaintiff; that the vehicle was totally destroyed on March 8, 1959, while the insurance was in force; that the vehicle then had a value of $6,088; and that a sum in excess thereof was due plaintiff on account of its lien on the vehicle.

The exhibits to the complaint consisted of a "Certificate of Insurance" in favor of Ferd P. Kline in which Underwriters agreed to insure Kline in an amount not exceeding the actual cash value of the property, against direct and accidental loss or damage to the 1955 Mack Diesel tractor from certain perils, including collision or upset as defined therein. By a loss payable clause Underwriters agreed to pay the loss, if any, under the policy, to the bank as its interest may appear.

Underwriters answered that the complaint failed to state a claim; admitted the issuance of the Certificate of Insurance to Kline and of the loss payable clause to

plaintiff; and denied all other material allegations of the complaint. Affirmatively, Underwriters pleaded that the insurance was a restricted and limited coverage and pleaded in abatement the pendency of an action in the courts of New Mexico against Underwriters by Ferd P. Kline relating to the identical subject matter, and that a recovery in both suits would amount to a double recovery against defendant. Plaintiff filed a reply admitting the pendency of the New Mexico action and denying all other affirmative matter in the answer.

Upon trial to the court the findings were that the policy of insurance and the loss payable clause existed as alleged in the complaint; that the Mack tractor was damaged by upset on or about March 8, 1959; that the bank held a chattel mortgage on the vehicle with a balance due on the note secured thereby in the amount of $7,875.00; that the reasonable cost of repairs was $4,888.57; that a suit instituted by Kline against Underwriters was then pending in New Mexico, seeking recovery of the same damage to the tractor and that the bank is not a party to that action; that the loss payable clause provided that Underwriters be subrogated to the bank's rights under its security for any sums paid to it by Underwriters. Judgment entered in favor of the bank for $4,638.57 (there was a deductible item of $250.00) together with costs, and the court ordered that Underwriters be subrogated to the rights of the bank to that extent.

Upon the trial Exhibit A, the note and chattel mortgage relied on by the bank, was admitted in evidence over objection of counsel for Underwriters without supporting proof of its execution by Kline. The instrument was admittedly executed in the State of New Mexico and was duly acknowledged. The original payee of the note was Farmington Truck and Equipment Company, Inc., a New Mexico corporation. The instrument bore the endorsement of the corporation and it is undisputed

that the bank purchased the note from the corporation, before maturity.

It is argued that the court erred in receiving Exhibit A in evidence. The argument is made that:

"Plaintiff's rights, if any, against defendant are based on the Loss Payable Clause (Exhibit C) which, insofar as is pertinent, provides:

" 'Loss or damage, if any, under the policy shall be payable *as interest may appear* to Citizens Savings Bank * * *' " (Emphasis supplied.)

\* \* \*

"Plaintiff claims that it owns an interest in the Mack Tractor described in the insurance policy. It relies upon Exhibit A entitled Note and Chattel Mortgage. The note and chattel mortgage is purportedly signed by Ferd P. Kline and is made in favor of Farmington Truck and Equipment Company, Inc. It bore what purported to be Kline's acknowledgment before a New Mexico notary. It also bore on the back a purported assignment from the mortgagee to plaintiff bank.

"Exhibit A was produced and offered upon no qualification other than that it was received through the mail. No evidence was offered with respect to the genuineness of any of the signatures. Over timely and repeated objections the document was admitted.

\* \* \*

"The requirement of preliminary proof of genuineness is dispensed with in cases where, by statute, acknowledgment renders the document admissible. No such statute exists with respect to a note or a chattel mortgage of a motor vehicle."

Thus counsel for Underwriters base their argument on the premise that C.R.S. '53, 20-1-3 is not applicable to a chattel mortgage upon motor vehicles. The statute reads as follows:

"A chattel mortgage may be acknowledged before any officer authorized to take acknowledgments to deeds

conveying real property who shall certify the same in the same form as acknowledgments to deeds conveying real property, and such chattel mortgage, if so acknowledged and certified, or a certified copy thereof, may be admitted in evidence without the further proof of the execution thereof."

It is contended that this provision does not apply to motor vehicles because of the language contained in The Certificate of Title Act (adopted in 1949), C.R.S. '53, 13-6-19, which in pertinent part provides:

"The provisions of article 1 of chapter 20, Colorado Revised Statutes 1953, relating to the filing, recording, releasing, renewal, and extension of chattel mortgages, as the same is defined in section 13-6-2(13), shall not be applicable to nor shall the said provisions of said chapter 20 apply to the mortgaging of motor vehicles. * * *"

We cannot agree that the last quoted statute has the effect contended for by counsel for Underwriters. By the express terms used, only such provisions of the chattel mortgage act as relate, "* * * to the filing, recording, releasing, renewal, and extension of chattel mortgages" are made inapplicable to motor vehicles. The Certificate of Title Act does not do away with chattel mortgages on motor vehicles. Valid liens on such vehicles are still created by chattel mortgages and whenever such an instrument is executed and acknowledged "before any officer authorized to take acknowledgments to deeds conveying real property" it may be admitted in evidence "without the further proof of the execution thereof." The notary public who took the acknowledgment in New Mexico is a person "authorized to take acknowledgments to deeds conveying real estate." C.R.S. '53, 118-6-5 so provides. It follows that the note and chattel mortgage was properly admitted in evidence. Under the "loss payable" clause of the policy issued by Underwriters, loss or damage was payable "as interest may appear" to the bank. The proper admission of the

note and chattel mortgage in evidence was adequate to establish the "interest" of the bank which was the owner and holder thereof by purchase before maturity.

■ It is also contended by counsel for Underwriters that Kline was not the "owner" of the motor vehicle at the time he executed the chattel mortgage. The said mortgage was dated, signed and negotiated to the bank several months before Kline actually received a bill of sale to the vehicle from the dealer in Farmington from whom he purchased it. This fact alone does not prove that Kline had no insurable interest in the equipment. The contrary is clear from the record before us.

■ The "loss payable" clause attached to the insurance policy is what is commonly referred to as the "union" or "standard" mortgage clause, as distinguished from the "open" mortgage clause. As related to the mortgagee it provides that the insurance shall not be invalidated by any act or neglect of the mortgagor. In the instant case the effect of this clause is that the Underwriters have issued what amounts to two policies of insurance, one to the bank and one to Kline, the mortgagor. There are numerous decisions holding that the type of "loss payable" clause here involved creates a separate, distinct and independent contract between the insurance company and the mortgagee. Having accepted the premium and issued the policy with the mortgage clause attached, Underwriters are estopped to deny the validity of the mortgage. *Syndicate Ins. Co. v. Bohn, et al.*, 65 Fed. 165; *Great American Ins. Co. v. Southwestern Finance Co.*, (Okla.) 297 P. (2d) 403; *National Fire Ins. Co. v. Dallas, et al.*, 174 Okla. 596, 50 P. (2d) 326.

Finally, it is argued that there was insufficient evidence to sustain the burden of proof resting upon the bank to establish that there had been "* * * accidental loss of or damage to * * *" the motor vehicle covered by the policy. One of the perils insured against by the policy was loss or damage resulting from "accidental" collision or "upset." We have read the record and con-

clude that there is ample evidence, direct and circumstantial, to support the judgment.

The judgment is affirmed.

MR. JUSTICE FRANTZ and MR. JUSTICE MCWILLIAMS concur.